Alfonso Lastra Chárriez, peticionario y apelado, Ex Parte;
El Pueblo de Puerto Rico, apelante.

Núm. 7954.—*Sometido:* Junio 19, 1939. *Resuelto:* Abril 25, 1940.

R. A. *Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El
Pueblo, apelante; *J. Ramírez Santibáñez, Antonio Reyes Delgado,
Angel Marchand Paz, Lionel Fernández Méndez y Dubón &
Ochoteco,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del
tribunal.

La Corte de Distrito de San Juan, por su Juez Sr. Romany,
sentenció al abogado Sr. Alfonso Lastra Chárriez a pagar
una multa de $5.00 y a extinguir quince días de cárcel por un
alegado delito de desacato cometido en su inmediata presen-
cia. El perjudicado recurrió ante el Juez Asociado de este
tribunal, Sr. Travieso, y mediante una petición de hábeas
corpus solicitó y obtuvo la anulación de la sentencia y la
correspondiente orden decretando su inmediata libertad.
No conforme, El Pueblo de Puerto Rico apeló de la senten-
cia dictada por el Juez Sr. Travieso para ante el tribunal
en pleno. Fundamentando su recurso el apelante señala los
siguientes errores:

"1. Al permitir declarar al peticionario 'cuál había sido su intención y su estado de ánimo durante el incidente que motivó su condena por desacato,' tratando con dicha declaración de controvertir los hechos expuestos en la sentencia dictada por la corte sentenciadora, y al tomar en cuenta dicha declaración del peticionario con respecto a su intención y estado de ánimo para resolver que el peticionario no era culpable de desacato.

"2. Al resolver que había una *importante incongruencia* entre el relato de los hechos en el preámbulo de la sentencia por desacato y la transcripción taquigráfica del incidente que forma parte de dicha sentencia, llegando a la conclusión de que el peticionario no había 'interrumpido' al juez sentenciador.

"3. Al resolver que los hechos expresados en la sentencia no constituían desacato."

El 19 de junio último, que fué el señalado para la vista del recurso, el apelado presentó una moción en la que solicitó que desestimemos la apelación interpuesta por el Pueblo de Puerto Rico, alegando falta de jurisdicción en este tribunal para conocer del recurso. La supuesta falta de jurisdicción consiste en:

"A. Que el escrito de apelación en este caso fué interpuesto por El Pueblo de Puerto Rico, y el Fiscal de esta Hon. Corte de acuerdo con las disposiciones de la Ley Orgánica de Puerto Rico no representa a El Pueblo de Puerto Rico, sino que esa representación la ostenta única y exclusivamente el Hon. Procurador General de Puerto Rico, siendo por lo tanto nula y de ningún efecto la actuación que ha asumido indebidamente el Fiscal de esta Hon. Corte en el presente recurso.

"B. Que asumiendo que el Fiscal de esta Hon. Corte ostente la representación de El Pueblo de Puerto Rico, El Pueblo de Puerto Rico no obstante las disposiciones contenidas en las Secciones 1 y 2 de la Ley de 12 de marzo de 1903 (Compilación 1911, Secciones 6547 y 6548) no tiene derecho a apelar contra una decisión ordenando la excarcelación de un acusado que ha sido privado ilegalmente de su libertad.

"C. Que asumiendo que proceda, de acuerdo con la ley, recurso de apelación contra una sentencia ordenando la excarcelación del peticionario apelado, por haber sido privado ilegalmente de su libertad, habiendo sido promovido el presente recurso de hábeas corpus contra Andrés Lugo, en su carácter de Alcaide de la Cárcel

de Distrito de San Juan, el citado Andrés Lugo, en tal carácter, es parte perjudicada, y siendo parte perjudicada, el escrito de apelación en este caso debió haber sido notificado a dicho Andrés Lugo, en el carácter antes referido, y no habiendo sido notificado ese escrito de apelación, y siendo dicho Andrés Lugo, en su carácter de Alcaide de la Cárcel de Distrito de San Juan, parte perjudicada o agraviada en este procedimiento, esta corte carece de jurisdicción para entender en este procedimiento.''

La índole de las cuestiones promovidas por el apelado exige que las discutamos en primer término, ya que de prosperar todas o cualquiera de ellas nos relevaría de considerar el recurso en su fondo.

█ (A) No podemos convenir con el apelado en que la representación de El Pueblo de Puerto Rico ante este tribunal la ostenta ''única y exclusivamente el Hon. Procurador General de Puerto Rico.'' El artículo 14 de nuestra Ley Orgánica terminantemente resuelve la cuestión al declarar que el Procurador General *''será responsable de la debida representación de El Pueblo de Puerto Rico* o de sus funcionarios debidamente constituídos, en todas las demandas (el original inglés dice acciones) y procesos civiles o criminales ante el Tribunal Supremo de Puerto Rico en los cuales El Pueblo de Puerto Rico esté interesado o sea parte.'' La responsabilidad que ese precepto impone al Procurador General no implica necesariamente que sea él la única persona que, con exclusión de cualquier otro abogado, pueda ostentar esa representación. Su deber se circunscribe a velar porque El Pueblo de Puerto Rico esté debidamente representado en cualquier procedimiento ante este tribunal en todo asunto en que El Pueblo o sus funcionarios debidamente constituídos puedan estar interesados. Es obvio que ese deber puede cumplirlo a cabalidad el Procurador General asumiendo la representación legal personalmente o a través de sus auxiliares, entre los cuales se halla el fiscal de este tribunal.

█ (B) Existe en los Estados Unidos un marcado conflicto de autoridades en relación con el derecho de apelación

contra órdenes finales o sentencias dictadas en procedimientos de hábeas corpus. El peso de las autoridades bajo la Ley Común sostiene que contra una orden o sentencia decretando la libertad de una persona arrestada, no existe remedio alguno a favor del Estado o de sus funcionarios. Véanse las monografías en 10 A.L.R. 385, 386, y 30 A.L.R. 1322. Pero esta regla de la Ley Común ha sido variada por estatuto en muchos Estados, creándose el derecho de revisión ya por auto de error *(writ of error)* ya por apelación, tanto a favor de la persona privada de su libertad como a favor del Estado o de sus funcionarios. No fué hasta el año 1927 que California aprobó el artículo 1506 del Código Penal a virtud del cual se concedió al Estado el derecho de apelación de una orden o sentencia en un procedimiento de hábeas corpus en que se hubiere decretado la libertad de un detenido. En Nueva York, primero bajo el artículo 2059 del Código de Enjuiciamiento Civil y más tarde por el artículo 1275 de la Ley de Práctica *(Civil Practice Act),* se ha mantenido el derecho de apelación en procedimientos de hábeas corpus, tanto a favor del preso como del Estado. Véase la interesante opinión de la Corte de Apelaciones de Nueva York, emitida por su entonces Juez Presidente Sr. Cardozo, en el caso de *People ex rel. Sabatino* v. *Jennings,* 63 A.L.R. 1458, 246 N.Y. 258, 158 N.E. 613.

Nuestro Código de Enjuiciamiento Criminal, que por disposición legislativa no empezó a regir hasta las doce del día primero de julio de 1902, estableció el recurso de hábeas corpus en sus artículos 469 al 500 ambos inclusives. Nada dispuso, sin embargo, sobre el derecho de revisión de las órdenes o sentencias que pudieran dictarse en este procedimiento. Fué un año después de la aprobación de dicho Código, por la ley de 12 de marzo de 1903 (Código de Enjuiciamiento Criminal, ed. 1935, pág. 329), que nuestra Asamblea Legislativa estableció y reglamentó en todos sus detalles el derecho de apelar en casos de hábeas corpus, concediéndolo tanto al reo cuando se le denegare el recurso, como al Pueblo

de Puerto Rico cuando fuere decretada la libertad de un detenido o se le admitiese fianza para permanecer en libertad. Así, pues, nuestra Asamblea Legislativa, adelantándose a la de California, por la citada ley de 12 de marzo de 1903 cerró las puertas a toda controversia acerca del derecho de El Pueblo de Puerto Rico a apelar de sentencias u órdenes finales dictadas en procedimientos de hábeas corpus.

Sostiene el apelado que no obstante las disposiciones de la ley últimamente citada, El Pueblo de Puerto Rico no tiene derecho a apelar de una decisión en un procedimiento de hábeas corpus que ordena la libertad de un detenido. La claridad del precepto legal nos autoriza a inferir que la contención del apelado descansa en la supuesta inconstitucionalidad de aquella parte de la ley que concede el derecho de apelar a El Pueblo de Puerto Rico. No cita, sin embargo, autoridad alguna que lo sostenga y la cuestión se promueve ahora por primera vez en esta jurisdicción. Solamente en California, que sepamos, ha sido impugnada la constitucionalidad de un precepto análogo al nuestro. Se atacó la constitucionalidad del artículo 1506 del Código Penal que entre otras disposiciones concede al Estado en ciertos casos el derecho de apelación en procedimientos de hábeas corpus. La impugnación se basó principalmente en cierta facultad de reglamentación que en el referido artículo 1506 se concede al Consejo Judicial en relación con el recurso de hábeas corpus. Se sostuvo la validez de la facultad concedida al Consejo Judicial, arguyéndose que si bien la Asamblea Legislativa no podía prohibir el auto de hábeas corpus, porque de hacerlo así infringiría el precepto constitucional que lo garantiza, ningún principio constitucional impide que se regule el procedimiento. *In re Alpine,* 203 Cal. 731, 745, 58 A.L.R. 1500.

Lo mismo podría decirse con respecto al poder de nuestra Asamblea Legislativa para conceder el derecho de apelación al Gobierno. La Carta Orgánica, en su artículo 2, prohibe la suspensión del privilegio del auto de hábeas corpus

pero no contiene ninguna otra disposición que prohiba a la Asamblea Legislativa reglamentar ese derecho.

 Atendida la naturaleza civil del auto de hábeas corpus, no vemos cómo pueda declararse inconstitucional un estatuto que como el nuestro y el de varios Estados, autoriza el recurso de apelación a favor del Gobierno. Tratando de la naturaleza del auto de hábeas corpus, ha dicho la Corte Suprema de Estados Unidos:

"El auto de hábeas corpus es el remedio que la ley concede para hacer valer el derecho civil de la libertad personal. A veces es necesario recurrir a él con motivo de actuaciones que se hayan llevado a efecto en la aplicación de leyes para el castigo de delitos; pero el procedimiento judicial que tiene efecto dentro del hábeas corpus no tiene por objeto investigar el acto criminal denunciado, sino investigar el derecho a la libertad, no obstante el acto criminal. Los procedimientos para hacer valer (*enforce*) derechos civiles, son procedimientos civiles y los procedimientos para castigar los delitos son procedimientos criminales. En el presente caso el peticionario se halla detenido por virtud de un procedimiento criminal. El proceso contra él es un proceso criminal, pero el auto de hábeas corpus que él pueda obtener no es parte del proceso criminal. Por el contrario, es un nuevo pleito instado por él para que se le reconozca un derecho civil que invoca contra aquellos que lo tienen privado de su libertad a virtud del proceso criminal. Si él deja de probar su derecho a su libertad, podrá ser detenido para ser sometido a juicio por el delito; pero si prueba su derecho debe ser puesto inmediatamente en libertad. El procedimiento (de hábeas corpus) lo instituye él mismo en reclamación de su libertad, no el Gobierno para castigarle por su delito." *Ex parte Tom Tong,* 108 U. S. 556, 27 L. ed. 826.

Al mismo efecto dijo el Juez Presidente Marshall:

"La cuestión de si un individuo deba ser confinado en prisión, es siempre distinta de la cuestión de si debe ser convicto o absuelto del cargo de que se le juzga, y por lo tanto estas cuestiones son independientes y pueden ser decididas en cortes distintas." *Ex parte Bollman & Swartwout,* 4 Cranch 75–101.

Siendo el procedimiento de hábeas corpus de naturaleza civil y completamente independiente y extraño al acto delic-

tivo que motivó la prisión, la ley que concede el derecho de apelación a favor de El Pueblo de Puerto Rico no puede estar en conflicto con aquella parte del artículo 2 de nuestra Ley Orgánica que garantiza a las personas el derecho a no ser puestas dos veces en riesgo *(to be twice put in jeopardy)* de ser castigadas por el mismo delito, cláusula constitucional que sin duda tuvo en mente el apelado al sugerir la inconstitucionalidad de la ley en controversia. Claro es que siendo el recurso de hábeas corpus un remedio puramente civil y extraño al delito que causó la prisión del peticionario, no puede sostenerse con éxito que al apelarse de la sentencia que decretó su excarcelación en el hábeas corpus, se esté exponiendo de nuevo al peticionario por el mismo delito.

(C) Réstanos ahora considerar la tercera y última de las cuestiones suscitadas en la moción de desestimación, que se reduce a determinar si es necesario que el Pueblo de Puerto Rico, para perfeccionar su escrito de apelación en casos de hábeas corpus, deba notificar al funcionario bajo cuya custodia hubiere estado el detenido.

Es verdad que la sección primera de la ley que nos ocupa, la de 12 de marzo de 1903, sostiene que podrá interponer recurso de apelación para ante el Tribunal Supremo de Puerto Rico *"cualquiera de las partes agraviadas."* ¿Puede considerarse *parte agraviada* el funcionario bajo cuya custodia se hallare el detenido? Ésa es la cuestión a resolver. La sección 2 de la referida ley desvanece cualquier duda que pueda causar la vaguedad en la redacción de la sección primera, al conceder el derecho de apelación a nombre de El Pueblo de Puerto Rico y autorizar al fiscal del distrito respectivo, al del Tribunal Supremo, o al Procurador General o a un abogado debidamente autorizado por este último, para incoar el recurso. Al no mencionar al jefe de la prisión, claro es que quedó excluído de ese derecho. *Expressio unius est exclusio alterius.*

Interpretando una disposición legal análoga a la expresada en la sección primera de la ley en cuestión, se ha resuelto

que la frase *"parte agraviada" (party aggrieved)* no incluye al funcionario bajo cuya custodia se hallaba el detenido al ser puesto en libertad por un auto de hábeas corpus, resolviéndose además que dicho funcionario no tiene derecho a apelar. *Burr* v. *Foster,* 132 Ala. 41, 31 So. 495; *Re Quinn,* 37 N.Y. Supp. 534; *Re Baker,* 56 Vt. 1. Es evidente que si el jefe de la prisión no tiene derecho a apelar por no ser parte interesada o agraviada por la orden o sentencia que decretó la libertad del confinado, tampoco tiene aquel interés que exija su notificación para la perfección del recurso que El Pueblo pueda establecer.

 Resueltas adversamente al apelado las tres cuestiones jurisdiccionales levantadas en su moción de desestimación, procede considerar ahora los errores señalados por el apelante. Invertiremos el orden del señalamiento de errores, considerando en primer término el tercero y último de ellos, ya que de ser constitutiva de desacato la conducta del apelado, conforme aparece del mandamiento de prisión, será innecesario considerar los dos primeros señalamientos de error.

El incidente que motivó la sentencia por desacato tuvo lugar mientras se constituía el jurado en un caso en que el Sr. Lastra ostentaba la representación legal del acusado. Transcribiremos a continuación la sentencia de la corte de distrito, de la cual aparece la conducta observada por el acusado, que se estimó constitutiva de desacato:

"Por cuanto en el día de hoy se estaba celebrando la vista del caso contra Santiago Ramos, por un delito de asesinato;

"Por cuanto, en corte abierta, mientras se examinaba al jurado, señor Saldaña, éste alegaba que estaba enfermo, a pesar de que el Juez que preside lo veía constante y continuamente por las calles de San Juan;

"Por cuanto, cuando la corte estaba considerando la solicitud que había hecho el jurado señor Saldaña, el abogado de la defensa señor Alfonso Lastra Chárriez interrumpió a la corte, advirtiéndole el Juez que provee que no debía interrumpirle;

"Por cuanto la corte entonces ordenó al señor Lastra que ocupara su asiento en estrados;

"Por cuanto el señor Lastra no obedeció la orden de la corte;

"Por cuanto la corte insistió en que el señor Lastra ocupara su asiento que le corresponde en estrados en este Tribunal, manifestando una desobediencia completa a la orden dictada por la corte;

"Por cuanto la corte quiso en primer término y le impuso una multa de $5 para advertirle de la obligación que estaba de obedecer las órdenes del Tribunal, de ocupar su asiento en la corte en estrados;

"Por cuanto la corte suplicó al señor Lastra que tuviera la bondad de ocupar su asiento, no habiéndolo hecho y habiendo desobedecido la orden del tribunal;

"Por cuanto la corte entiende que ésta es una conducta irrespetuosa, que tiende a perturbar los procedimientos ordenados de la corte;

"Por cuanto el incidente a que se refieren los anteriores 'por cuantos' ocurrió en la forma siguiente, tomado del récord taquigráfico:

" 'LA CORTE: ¿Perentorias el Fiscal?

" 'SR. FISCAL: Ninguna.

" 'LA CORTE: ¿Perentorias la defensa?

" 'DEFENSA: (Sr. Lastra): Ninguna.

" 'LA CORTE: Queda aceptado el jurado. Presten juramento definitivo.)

" '(El jurado no llegó a prestar el juramento definitivo.)

" 'JURADO: (Sr. Manuel Saldaña Crosas): Yo suplico que se me exima porque estoy enfermo.

" 'LA CORTE: La Corte lamenta mucho no acceder a la solicitud hecha por el Sr. Saldaña. La Corte ha visto al Sr. Saldaña personalmente por todos los sitios de San Juan y lo ve continua y diariamente. La Corte desea advertir a los Señores del Jurado que está haciendo falta y es completamente necesario de que haya miembros del Jurado distinguidos que prestigien la administración de Justicia. Es un deber ciudadano de cooperar a la administración de justicia y no cumple con sus deberes ciudadanos aquél que por motivos fútiles quiere evadir esta responsabilidad. La Corte tiene una gran responsabilidad en la selección de las personas que deben comparecer para servir como jurado. La Corte lamenta y sabe que el señor Saldaña anda por San Juan, lo ha visto por San Juan en distintos sitios. La Corte no excusa al señor Saldaña. Una cuestión resuelta ya y tenga la bondad de sentarse el señor Saldaña.

" 'Señor Saldaña: ¿A pesar de traer pruebas?

" 'La Corte: Siéntese el señor Saldaña.

" 'Señor Saldaña: ¿Yo puedo hacer una indicación que esté fuera de la enfermedad? Pido a Su Señoría que me excuse como jurado porque yo no creo en la institución del Jurado.

" 'Sr. Lastra: ¿Me permite la Corte?

" 'La Corte: No, un momento.

"Sr. Lastra: Yo tengo intereses que defender. Yo quiero decir que la defensa representa a un acusado, y que el acusado tiene interés en que se haga justicia, y que este señor Jurado se puede enfermar después de dos o tres días de estarse viendo el caso y tener que disolver el jurado por esa enfermedad y así perjudicarse los intereses de la defensa, y yo respetuosamente solicito que se elimine, por estar enfermo al Sr. Jurado.

" 'La Corte: Por ese hecho no lo va a eliminar.

" 'Sr. Lastra: Excepción.

" 'La Corte: Un jurado que dice que no cree en la institución del jurado, está incapacitado moralmente para sentarse en el jurado. La corte ordena la eliminación permanente del Sr. Saldaña como jurado. Puede retirarse.

" 'Sr. Saldaña: Muchas gracias, señor Juez.

" 'La Corte: Otro jurado. ¿Se prestó juramento?

" 'Señor Lastra: Sí, se prestó juramento.

" 'La Corte: El señor Lastra quiere sentarse en su sitio. La Corte desea que el señor Lastra se siente en su sitio.

" 'Sr. Lastra: Y yo le digo al Sr. Juez que la defensa no se sienta porque no tiene deseos de sentarse, sin faltarle al respeto a la Corte.

" 'La Corte: La Corte ordena que se siente.

" 'Sr. Lastra: Pues yo no me siento.

" 'La Corte: La Corte lo condena a pagar $5 de multa por desacato. Siéntese el Sr. Lastra.

" 'Sr. Lastra: Yo no me siento.

" 'La Corte: Quince días de cárcel por desacato. Márshal, hágase cargo del abogado.'

"Por tanto, la Corte ordena al abogado Sr. Alfonso Lastra Chárriez a pagar cinco dólares ($5) de multa y a cumplir quince días de cárcel por desacato cometido en corte abierta."

Convenimos con el apelado en que cuando el Sr. Lastra interrumpió a la corte para solicitar que el jurado Sr. Saldaña fuese excusado por enfermedad, actuó legalmente en

el cumplimiento de sus deberes profesionales para con su cliente. Siendo ello así, no puede legalmente considerarse que esa interrupción perturbase los procedimientos, como no los hubiera perturbado si la interrupción hubiese sido para anotar una excepción o hacer valer cualquier otro derecho de su representado. Como muy bien alegaba el apelado, después del agotamiento natural producido por dos o tres días de juicio, la enfermedad que alegaba sufrir el Sr. Saldaña podía agravarse, y no existiendo todavía en Puerto Rico la ley que en previsión de esa contingencia rige en muchos estados, autorizando la selección de un miembro adicional del jurado, hubiera sido preciso empezar de nuevo el juicio, con detrimento de los intereses tanto de El Pueblo como del acusado.

Tampoco actuó incorrectamente el Sr. Lastra cuando en contestación a una pregunta de la corte manifestó que el jurado había prestado juramento definitivo. Fué en ese momento en que tuvo lugar el siguiente incidente:

"La Corte: El Sr. Lastra quiere sentarse en su sitio. La Corte desea que el Sr. Lastra se siente en su sitio.

"Sr. Lastra: Y yo le digo al Sr. Juez que la defensa no se sienta *porque no tiene deseos de sentarse,* sin faltarle al respeto a la Corte.

"La Corte: La Corte ordena que se siente.

"Sr. Lastra: Pues yo no me siento.

"La Corte: La Corte le condena a pagar $5 de multa por desacato. Siéntese el Sr. Lastra.

"Sr. Lastra: Yo no me siento."

El magistrado que preside una sala de justicia, mientras se halla en el cumplimiento de los deberes de su cargo, representa la majestad de la ley, y sea quien fuere la persona que en esos momentos actúa como ministro de la justicia, es acreedora al más profundo respeto, tanto por parte del público que presencia los procedimientos como por los abogados que intervienen en ellos. Parece oportuno transcribir aquí la cita que del caso de *Dodge* v. *State,* 140 Indiana

284, 39 N. E. 745, 746, se hace con aprobación en el de *Ex parte Grossman* (Cal.) 293 P. 683, 685:

"Es siempre lamentable que surjan casos en que sea necesario que una corte tenga que castigar por desacato a un miembro del foro. A los abogados postulantes se les considera propiamente parte integrante de la corte (*court's constituency*) para auxiliarla en la debida administración de justicia. Se exige de cada uno de ellos jurar que honrada y fielmente cumplirá sus deberes como tal abogado, y uno de los deberes cardinales impuéstosle por la ley es mantener el respeto a que son acreedores los tribunales de justicia y los funcionarios judiciales. . . . La determinación de si un desacato ha sido o no cometido, no depende de la intención del ofensor, sino del acto por él realizado. La negativa de faltar al respeto o de propósito de perturbar la administración de justicia, no excusa a la persona a quien se imputa la ofensa, cuando lo contrario resulta de una justa interpretación del lenguaje por él usado. . . . Es deber ineludible de todo abogado ceder respetuosamente a las reglas y decisiones de la corte, ya sean correctas o equivocadas, reservando los derechos de su cliente mediante la correspondiente excepción. El remedio para la corrección de los errores de la corte, si los hubiere, está provisto adecuadamente por la ley."

En parecidos términos se expresaron la Corte de Circuito de Apelaciones, Segundo Circuito, en el caso de *U.S.* v. *Landes,* 97 F. (2d) 378, 381, y la de Distrito de Apelaciones, Tercer Distrito de California, en el de *Platnauer* v. *Superior Court,* 163 P. 237, 241.

En el caso de *Dodge* v. *State,* supra, se agregó además que el hecho de que el lenguaje del juez sea provocativo o rudo no justifica al abogado para desacatar a la corte. Y es que el desacato no se comete contra la persona del juez, sino contra el alto ministerio que él representa.

Hemos examinado cuidadosamente los casos citados en los alegatos y en la opinión que sirve de base a la sentencia apelada y en ninguno de ellos se niega el derecho del juez que preside un tribunal de ordenar a un abogado que se halla de pie en el estrado, que ocupe su asiento, siempre que en esos momentos no esté desempeñando para su representado

cualquier gestión profesional que exija o justifique su permanencia de pie mientras la realiza.

En el caso de autos, el abogado Sr. Lastra no realizaba gestión alguna que justificara desobedecer la orden de la corte. No se estaba interrogando ningún testigo, no estaba él argumentando ante la corte o consignando una excepción. Él mismo declaró que no tomaba su asiento, simplemente porque no tenía deseos de sentarse, y por tres veces consecutivas desobedeció la orden de la corte a ese efecto. Es verdad que en los casos que hemos examinado, la orden de la corte al abogado para que ocupase su asiento en el estrado, generalmente fué motivada para poner fin a una supuesta conducta desordenada por parte del letrado; pero esto no implica que el juez que preside una sala de justicia carezca de la facultad de ordenar que ocupe su asiento un abogado que se halla innecesaria aunque ordenadamente de pie en el estrado o en cualquier parte de la sala, sin que sea requisito previo a la validez de esa orden la existencia de una necesidad que la justifique. Basta que la orden dictada sea legal para que exista el deber de obedecerla.

El caso de *Ex parte Shortridge,* 90 P. 478, en el que pone gran énfasis la representación del apelado, no es de aplicación al que nos ocupa. En aquél, un abogado que representaba en juicio a una de las partes, fué condenado a veinticuatro horas de prisión por desacato. El mandamiento de prisión expresaba que mientras se verificaba el examen de un testigo, el abogado en cuestión, después de haber sido reiteradas veces requerido para que ocupase su asiento y se abstuviese de interrumpir los procedimientos, rehusó obedecer la orden de la corte. No se decía, sin embargo, en qué consistía la alegada interrupción. Interpuesto recurso de hábeas corpus para ante la Corte de Apelaciones del Primer Distrito de California, se anuló la sentencia de desacato por insuficiencia del auto de prisión. Resolvió la corte que del auto de prisión deben aparecer los hechos constitutivos de desacato, pues tratándose de una ofensa de naturaleza

criminal, tanto la acusación como las conclusiones de la corte deben ser estrictamente interpretadas a favor del acusado. Se sostuvo además, que tratándose de un abogado que en aquellos momentos se hallaba ocupado en la defensa de su representado, no puede presumirse que toda interrupción a la corte sea constitutiva de desacato, ya que por razón de su profesión el abogado frecuentemente tiene que interrumpir a la corte, ya sea para interrogar u oponerse a una pregunta hecha a un testigo, ya para consignar su excepción o hacer cualquier otra alegación en defensa de los intereses que le han sido confiados. En tales casos, mientras actúe con el debido respeto, su conducta es perfectamente legal y como para dirigirse a la corte es su deber ponerse de pie, precisamente en señal de respeto al tribunal, claro es que el rehusar sentarse en esas condiciones no puede ser constitutivo de desacato.

En el caso que nos ocupa, el auto de prisión transcribe literalmente el lamentable incidente, de forma que los hechos que la corte estimó constitutivos de desacato aparecen literalmente expuestos en el mismo.

También se distingue el caso de Shortridge, supra, del que nos ocupa, en que en este último el letrado no realizaba ninguna de las gestiones anteriormente mencionadas que pudieran justificar la necesidad de mantenerse de pie no obstante el requerimiento de la corte.

Otro caso en que también descansa fuertemente el apelado es el de *Ex parte Crenshaw* (Tex. Crim. App.) 31 A.L.R. 1181. Los hechos de este caso pueden resumirse así: se celebraba un nuevo juicio en un caso criminal en el que Crenshaw ostentaba la representación legal del acusado. Durante una discusión entre el fiscal y la defensa sobre la admisibilidad de cierta evidencia, el abogado defensor hizo mención de lo que sobre la misma cuestión había resuelto la Corte de Apelación al revocar la sentencia anterior y conceder el nuevo juicio. El juez, en presencia del jurado, hizo ciertas manifestaciones tendentes a desacreditar la resolu-

ción del tribunal superior. Crenshaw, en defensa de los intereses de su cliente, se puso de pie para tomar excepción del comentario que en presencia del jurado había hecho el juez. Éste le ordenó que ocupase su asiento. Rehusó obedecer el abogado, manifestando que él necesitaba consignar su excepción en el récord. La corte lo castigó por desacato. Radicó Crenshaw una petición de hábeas corpus en la Corte de Apelaciones Criminales de Tejas, y fué anulada la sentencia, fundándose la corte de apelación en que el peticionario, en su carácter de abogado, tenía el derecho inviolable de consignar su excepción a los comentarios hechos por la corte sentenciadora en presencia del jurado, y que al hacer uso de ese derecho, es decir, al dirigirse a la corte para consignar su excepción, era su deber hacerlo de pie. Y por consiguiente, su conducta, perfectamente legal, no podía constituir desacato.

Al final de la opinión en el caso de Crenshaw, supra, como para disipar cualquier duda que pudiera surgir del lenguaje usado en la opinión, se consignó la siguiente aclaración:

"No se entienda que resolvemos que no constituye desacato el estar continuamente presentando objeciones frívolas equivalentes a una obstrucción del progreso ordenado del juicio; *tampoco debe entenderse que resolvemos que no constituye desacato permanecer un abogado de pie de manera provocativa una vez requerido por la corte para que tome su asiento después de haber cumplido su deber de consignar una excepción,* pero el caso de autos no está comprendido en ninguna de las dos hipótesis."

En el caso de *Platnauer* v. *Superior Court,* supra, el peticionario era el abogado principal del demandado en un caso cuyo juicio se estaba celebrando. Se entabló una discusión entre el peticionario y la corte sobre cierta evidencia, y finalmente la corte manifestó a Platnauer que ya había resuelto la cuestión y le ordenó ocupar su asiento. Pidió permiso Platnauer para dirigirse a la corte y ésta le contestó que no deseaba oírlo. Rehusó sentarse el abogado y la corte, valiéndose del *sheriff,* le obligó a ocupar su asiento. Le

indicó entonces la corte que él era un estorbo en el juicio y que no le permitiría continuar participando en el caso. Continuaron los procedimientos y poco después el abogado Platnauer se dirigió a la corte para hacer una sugerencia en relación con cierta prueba que se estaba ofreciendo. Volvió la corte a ordenarle que se sentase. Alegó el abogado que había sido empleado para representar a su cliente y que tenía derecho a representarlo. La corte manifestó que la conducta de Platnauer era indigna de un abogado, lo declaró incurso en desacato y le impuso un día de cárcel. Para revisar la sentencia por desacato radicó el peticionario una solicitud de *certiorari* ante la Corte de Distrito de Apelaciones, Tercer Distrito de California. La Corte de Apelaciones planteó la cuestión en la siguiente forma:

"Por consiguiente, toda la controversia ante nos se reduce a la única y simple cuestión de determinar si dentro de las facultades legales de una corte se halla la de privar del derecho de participar en un juicio a un abogado debidamente admitido a postular, empleado por un litigante para representarlo en el caso, aunque dicho abogado pueda en algún momento anterior haber sido culpable de conducta contumaz, y si puede castigarlo por desacato si intentare representar activamente a su cliente en el juicio." (Pág. 241.)

La cuestión así planteada la resolvió la corte en los siguientes términos:

"No resulta de los hechos expuestos que el peticionario en momento alguno se dirigiese a la corte en lenguaje irrespetuoso. Por el contrario, parece haber actuado perfectamente consciente del deber de un abogado para con la corte, y al declarársele culpable de desacato sólo hacía una sugerencia en lenguaje respetuoso en cuanto a la falta de prueba de que las papeletas se hallaban en las mismas condiciones en que habían sido recibidas. Actuaba él dentro de sus derechos como abogado al hacer esta sugerencia y al oponerse a la consideración de dichas papeletas hasta que tal prueba se presentase, aun en el caso de que su objeción no fuese legalmente sostenible y que, como cuestión de hecho, careciese de fundamento, lo que probablemente era cierto. Pero la corte parece haber sido inexorablemente insistente en hacer cumplir su orden de que el peticionario se abstu-

viese de tomar parte activa en el juicio o que bajo ninguna circunstancia se dirigiese a la corte; y como se ha dicho, fué solamente la insistencia del peticionario de ser oído en representación de su cliente, de quien era el principal abogado, lo que causó la sentencia y auto de prisión por desacato. En otras palabras, la alegada conducta irrespetuosa por parte del peticionario parece haber consistido en su pretensión de tomar parte en los procedimientos pendientes después de habérsele ordenado por la corte que se abstuviese de ello. Como hemos indicado antes, nuestra conclusión es que al así actuar la corte, se excedió en su autoridad y que la orden fué dictada en exceso de jurisdicción, siendo por consiguiente nula.''

En el caso de *Curran* v. *Superior Court* (Cal.) 236 P. 975, resuelto por la Corte de Distrito de Apelaciones, Primer Distrito de California, el principio envuelto fué el mismo que en el caso de Platnauer, supra. El abogado tomó una excepción y la corte le ordenó ocupar su asiento y conducir sentado el examen de repreguntas. Rehusó el abogado sentarse y condujo el interrogatorio de pie. Se resolvió que el examen de un testigo requiere que un abogado se aproxime a él, agregándose: ''Ninguna razón aparece del récord que justificase la orden de la corte para requerir al peticionario que se sentase y condujese en esa posición el interrogatorio. Siempre se ha asumido que la celebración ordenada de un juicio permite, si no requiere, que el abogado al presentar su caso, ya directamente a la corte, ya al jurado, o indirectamente a una y otro, a través de testigos, se ponga de pie, aunque sólo sea en señal de respeto; en verdad, la experiencia ha demostrado que la repregunta efectiva de un testigo requiere que se haga así; y creemos que dentro de las circunstancias, la corte inconscientemente se excedió en su autoridad, que fué a virtud de un momentáneo olvido de los derechos del peticionario como oficial de la corte en el cumplimiento de su deber para con su cliente y el público, y que dicha orden no era necesaria o propia por alguna mala conducta anterior por parte del peticionario.''

La frase ''ninguna razón aparece del récord que justifique la orden de la corte para requerir al peticionario que se

sentase y condujese en esa posición el interrogatorio'', contenida en la cita que inmediatamente precede, no debe interpretarse aisladamente, sino en relación con el contexto del párrafo en que aparece, del que resulta que el sentido de dicha frase debe ser que no existió razón que justificase a la corte privar al peticionario del derecho que como abogado se le reconoce a conducir de pie el interrogatorio de un testigo. Ya hemos visto que cuando el abogado en forma respetuosa hace uso de su inviolable derecho de dirigirse a la corte a favor de su cliente, tiene el deber, a la vez que el derecho, de hacerlo de pie y que la corte en defecto de circunstancias que la justifiquen no puede privarlo de ese derecho.

En el caso de *U.S.* v. *Landes,* supra, se ordenó al abogado que ocupase su asiento, y a pesar de que se hallaba en el desempeño de sus obligaciones para con su cliente, se sostuvo la sentencia por desacato que se le impuso al desobedecer la orden, porque mientras trataba de cumplir sus deberes profesionales lo hacía de manera irrespetuosa para con la corte.

No abrigamos duda alguna de que la corte de distrito no se excedió en sus poderes al ordenar al apelado que ocupara su asiento en el estrado, como pudo, de igual modo, haber ordenado sentarse a cualquier persona que en el sitio destinado al público se hallase de pie. Esa facultad está comprendida en el poder inherente de toda corte de justicia de hacer mantener el orden y el decoro en los procedimientos ante ella. Siendo legal la orden, como indiscutiblemente lo era, aun asumiendo que en el momento en que fué dictada no hubiere sido necesario que el apelado se sentase, aun así, repetimos, siendo una orden dictada con jurisdicción, era el deber del apelado obedecerla sin detenerse a cuestionar si las circunstancias del momento demandaban o no su cumplimiento.

Más gravedad que el hecho de rehusar sentarse, envuelven, a nuestro juicio, las palabras que en contestación al

requerimiento de la corte pronunciara el abogado, a saber: ''Y yo le digo al Sr. Juez que la defensa no se sienta *porque no tiene deseos de sentarse,* sin faltarle el respeto a la corte.'' Estas palabras son, a nuestro juicio, desafiantes y provocativas, y el juez no tenía otra alternativa, por el prestigio de la corte que presidía, que castigar al querellado por desacato.

Se dice en el caso *In re Hallinan,* 14 P. (2d) 797, 799:

''Convienen todas las autoridades en que un desacato puede cometerse por palabras o por actos, y que aunque el lenguaje por sí solo no sea constitutivo de desacato, puede serlo si se pronuncia de manera insolente o desafiante; y que al determinar si el lenguaje usado es constitutivo de desacato, deben tomarse en consideración no sólo las palabras vertidas, si que también las circunstancias concurrentes, el motivo que dió lugar a ellas, el tono de voz, la mirada, los gestos y el énfasis.''

Refiriéndose a la actitud que deben asumir las cortes de apelación al revisar sentencias por desacato, se citan con aprobación en el caso *In re Hallinan,* supra, las siguientes palabras de la Corte Suprema de Minnesota:

''Aunque tenemos jurisdicción para revisar una orden castigando por desacato criminal, la decisión de la corte inferior no debe ser revocada por motivos triviales. La oportunidad que tuvo la corte en cuya presencia se cometió el desacato para saber y determinar si los actos o palabras fueron realizados o dichas en menosprecio· y desacato de su autoridad, es vastamente mayor que la que podemos tener nosotros por la mera lectura del récord de tales actos o palabras. Los actos y las palabras, al exponerse por escrito, pueden aparecer enteramente inocentes, pero pueden haber sido hechos o habladas en forma tal que constituyan la mayor falta del respeto debido a las cortes mientras se hallan en el cumplimiento de su deber, y del decoro y buen orden que deben observarse en su presencia para permitírseles desempeñar adecuadamente sus funciones. Por esta razón no creemos formular la regla con demasiada rigidez, cuando decimos que una orden que declara culpable de desacato criminal no debe ser revocada a menos que sea manifiesto que ningún desacato se ha cometido, demostrándose así que la corte ejercitó su autoridad caprichosa, opresiva y arbitrariamente.''

 El privilegio contra arresto que invocó el peticionario como Senador de Puerto Rico, no merece seria consideración, pues como el propio apelado admite en su alegato, el privilegio en cuestión se ha interpretado en el sentido de limitarse a arrestos en casos civiles solamente, y no a los que puedan practicarse en casos criminales. Véanse los casos que cita el apelado, de *Williamson* v. *U.S.*, 207 U.S. 425, y *Ex Parte Emmett,* 7 P. (2d) 1096.

Además, el poder de castigar por desacato es inherente en los tribunales de justicia. No les ha sido conferido por la Constitución ni por el poder legislativo. Por consiguiente, aunque la Asamblea Legislativa puede reglamentarlo, no puede en manera alguna destruirlo. 3 Cornell Law Quarterly, 47, 48. Por lo tanto la sección 2 de la Ley definiendo los privilegios e inmunidades de los miembros de la Asamblea Legislativa, según fué enmendada por la núm. 34 de 1915 (pág. 65), invocada por el apelado, sería a todas luces inconstitucional si la interpretásemos en el sentido de privar a un tribunal de justicia de poder hacer efectiva una sentencia de prisión por un desacato cometido en su inmediata presencia por un miembro de la Asamblea Legislativa durante el período legislativo o durante los quince días precedentes o subsiguientes a dicho período.

*Por lo expuesto, procede en este caso revocar la sentencia que con fecha 7 de marzo de 1939 dictó el Juez Asociado Sr. Travieso, y en su lugar dictar otra desestimando la solicitud de hábeas corpus y devolviendo el peticionario a la custodia del Alcaide de la Cárcel de Distrito de San Juan, pero considerando este tribunal que en los casos aquí examinados, similares al presente, la sentencia impuesta generalmente no ha excedido de veinticuatro horas de prisión, le parece oportuno llamar hacia ese extremo la atención, por si el juez desacatado, en su sana discreción, considera justo modificar su sentencia en tal sentido.*

El Juez Asociado Sr. Travieso se inhibió.