EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EUDALDO BÁEZ GARCÍA, acusado y apelante.

Núm. 14997.—*Sometido:* Febrero 1, 1951. *Resuelto:* Febrero 13, 1951.

*Mario Báez García,* abogado del apelante; *Hon. Procurador General Víctor Gutiérrez Franqui (Vicente Géigel Polanco, Ex Procurador General,* en el alegato), *J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Frank Vizcarrondo Vivas, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

El abogado Eudaldo Báez García fué condenado por el Tribunal de Distrito de Puerto Rico, Sección de Mayagüez, por un delito de desacato cometido en corte abierta y sentenciado a pagar una multa de $10 o en su defecto a cumplir diez días de cárcel. No conforme con la sentencia apeló y en este recurso alega que la corte inferior erró (1) al castigar al apelante por desacato sin estar justificado dicho pronuncia-

miento por la actitud del abogado, y (2) habiendo incurrido en pasión y prejuicio al apreciar los detalles del incidente y declarar incurso en desacato al apelante. Sostiene, además,. que la querella (sic) en la forma en que está redactada no. aduce hechos suficientes constitutivos de desacato.

■ El apelante discute conjuntamente los errores pri-- mero y segundo y en igual forma los resolveremos.

Ulises Santiago inició acción sobre reclamación de salarios contra la Sucesión de Hermenegildo Méndez ante el Tribunal de Distrito de Puerto Rico, Sección de Mayagüez. Durante el juicio y cuando el Lic. Eudaldo Báez García, abogado de la sucesión demandada, estaba repreguntando al demandante, ocurrió lo siguiente:

"¿Usted dice que trabajó una semana de ocho pesos?
"Sí, señor.
"¿Tres de diez o una de diez?
"Dos de diez.
"¿Cuántas de once?
"El resto. Hasta que terminé.
"¿Cuántas?
"El resto.
"¿Pero cuántas? Usted tiene que saber.
"*Lic. Santana:* Él no está obligado. Él puede decir que el resto. Ellos me han aceptado el tiempo que trabajó. El Tribunal Supremo ha resuelto en diferentes casos, repetidas veces, que en estos casos lo único que necesita el demandante es el tiempo que trabajó, el salario, y después que lo otro es una simple operación aritmética. Ella me ha aceptado el tiempo de trabajo.
"*Lic. Báez:* ¿Cuántas semanas cobró a once pesos después que cobró dos de a diez?
"*La Corte:* Con lugar la objeción. Si él trabajó desde determinada fecha a determinada fecha y lo aceptó la parte demandada, como lo aceptó, entonces si cobró una semana a $8 y dos a $10, el resto es fácil de computarlo a base de número.
"*Lic. Báez:* Hay una alegación aquí que trabajó desde el 6 hasta el 26 de octubre.
"*La Corte:* Lo aceptó la parte demandada.
"*Lic. Báez:* Es que él dice una suma distinta. Nosotros alegamos que trabajó de 6 a 26 de octubre. Si V. H. hace una ope-

ración aritmética encontrará V. H. que no coincidimos. Estamos cubriendo las alegaciones. . .

"*La Corte:* Ésa no es la cuestión. La cuestión es la objeción a la pregunta que se le hizo.

"*Lic. Báez:* Excepción porque hemos sorprendido al testigo de El Pueblo de Puerto Rico en una mentira y estamos comprobando que está diciendo una mentira y el demandado tiene perfecto derecho a demostrar que el demandante es un mentiroso en la silla de los testigos y, de acuerdo con. . .

"*Lic. Santana:* Yo voy a pedir protección de la Corte para el testigo, señor Juez.

"*La Corte:* No tiene derecho el abogado a eso.

"*Lic. Báez:* Estamos anotando una excepción. . .

"*La Corte:* Un momento. Yo estoy hablando ahora. La Corte no va a permitir que se veje ni se insulte a un pobre infeliz que viene aquí a la Corte a reclamar sus derechos. Si los tiene, la Corte se los da; si no los tiene, la Corte se los niega, pero tiene derecho a la misma protección que tiene don fulano o don mengano que venga a declarar en la silla de los testigos. Porque sea un infeliz ordeñador de vacas el que esté declarando en la silla de los testigos no tiene menos derecho que nadie en esta Corte.

"*Lic. Báez:* Vamos a anotar una excepción a la resolución de la Corte. Nosotros sostenemos que en el apartado número tres de la demanda dice que empezó a trabajar el seis de septiembre hasta el 26 de octubre, ambos inclusives, devengando un salario semanal de diez dólares, o sea, durante un mes y veinte días. Nosotros entendemos que las alegaciones que se hacen en la demanda son falsas y constituyen una mentira por cuanto el testigo acaba de sostener ahora en la silla de los testigos que trabajó unos días, o dos semanas, a razón de diez dólares semanales.

"Este abogado hace constar que lo mismo le dice mentiroso a un rico que a un pobre y se lo dice a quienquiera que tenga que decírselo porque tiene valor personal para sostener sus alegaciones y para sobrellevar las consecuencias de sus alegaciones cuando lo hace con honradez y con decencia como entiende esta parte que lo está haciendo en el día de hoy. Las alegaciones hablan por sí. . .

"*La Corte:* Terminado el incidente.

"*Lic. Báez:* Estoy anotando una excepción.

"*La Corte:* Terminado el incidente. Siéntese el abogado. Márshal, haga sentar al abogado. Siéntese el abogado.

"*Lic. Báez:* Yo me siento porque V. H. lo manda, pero. . .

"*La Corte:* La Corte impone diez dólares de multa al abogado.

"*Lic. Báez: O diez días de cárcel.*

"*La Corte:* La Corte le impone diez dólares de multa al abogado o en su defecto un día de cárcel por cada dólar que deje de satisfacer. El Márshal hará cumplimentar esta sentencia inmediatamente que termine la vista de este caso. El abogado pagará diez dólares de multa o en su defecto diez días de cárcel por la forma irrespetuosa en que se ha comportado en este caso.

"*Lic. Báez:* Queremos anotar una excepción.

"*La Corte:* No quiero oír más al abogado. Siga preguntando.

"*Lic. Báez:* Yo someto el caso y entendemos que nos encontramos en un estado de indefensión.

"*La Corte:* El abogado tiene que seguir viendo el caso, porque incurre no sólo en una falta a sus deberes sino a la propia toga.

"*Lic. Báez:* No tenemos nada más que preguntarle al testigo.

"*Sra. Amalia Rivera:* Señor Juez, si la Corte me permite, yo sigo llevando el caso.

"*Lic. Báez:* Yo renuncio.

"*La Corte:* El Márshal hará cumplimentar la sentencia que acaba de dictar la Corte.

"*Lic. Báez:* Yo me voy con cualquier márshal. Yo me voy solo."

Con motivo de la actitud asumida por el apelante el juicio tuvo que ser suspendido para ser continuado en otra fecha.

El primer documento que aparece en la Transcripción de Autos en este caso está titulado "Acusación" y dice así:

"EN EL TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE MAYAGÜEZ—Estados Unidos de América, El Presidente de los EE. UU., ss.—El Pueblo de Puerto Rico *v.* Eudaldo Báez García. —Criminal Núm. T-84.—Por: DESACATO.—Incidente de Desacato en el Caso Civil T-12.—POR CUANTO: En la vista del caso civil T-12 seguido por Ulises Santiago v. Sucesión de Hermenegildo Méndez en reclamación de salarios, celebrada en el día de hoy, el Lic. Eudaldo Báez García, abogado de la parte querellada, durante el contrainterrogatorio del querellante, Ulises Santiago se condujo en forma irrespetuosa y ofensiva hacia el Tribunal

demostrando desprecio y menosprecio del Tribunal y de sus órdenes y resoluciones y observando una conducta desordenada, desdeñosa e insolente hacia el Tribunal, no acatando las reglas y resoluciones del mismo y pronunciando frases y palabras injuriosas para el querellante; POR CUANTO: El Tribunal consideró dicha conducta del abogado constitutiva de desacato y le condenó a pagar una multa de $10 o en su defecto a sufrir cárcel por un término de 10 días; POR TANTO: El Tribunal dispone y ordena que se haga efectiva esta orden de acuerdo con los términos de esta sentencia en forma de ley *expidiendo el Secretario el correspondiente mandamiento al Márshal para su ejecución.*—Dada en Mayagüez, P. R., hoy día 24 de julio de 1950.—(Fdo.) Ángel Fiol Negrón, Ángel Fiol Negrón, Juez de Distrito.—" (Bastardillas nuestras.)

Arguye el apelante que nada hay en el incidente que hemos transcrito que tienda a demostrar que él incurriera en desacato en corte abierta, según se define éste en el inciso 1 de la sección 1 de la Ley Definiendo el Delito de Desacato, según quedó enmendada por la Ley núm. 102 de 12 de mayo de 1937 (Leyes de Puerto Rico, 1937, pág. 250), al efecto de que lo constituirá, entre otros actos, la "conducta desordenada, desdeñosa o insolente, hacia un tribunal o juez o la Comisión Industrial de Puerto Rico constituída en pleno o por alguno de sus miembros, en presencia de dicho tribunal o durante una sesión del mismo, y tendente a interrumpir sus procedimientos o en presencia de algún jurado mientras esté en estrados, o deliberando en alguna causa." Sostiene que ninguna de las palabras pronunciadas por él ni su actitud personal hacia la corte pueden interpretarse como constitutivas de conducta desordenada, desdeñosa o insolente hacia el tribunal o juez sentenciador; que sus palabras tildando de mentiroso al demandante Ulises Santiago no constituyen desacato de acuerdo con lo resuelto en el caso de *Coll* v. *Leake, Juez de Distrito,* 17 D.P.R. 857 y, por último, que en ningún momento desobedeció la orden de la corte requiriéndole para que se sentase.

La misión de una corte apelativa en casos de esta naturaleza es muchas veces ardua y difícil y siempre es desagradable cuando surge en relación con la conducta observada por un miembro del foro. Y es que al resolver el caso, esta Corte no está en las mismas condiciones que la corte a quo para poder determinar el verdadero alcance de las frases y palabras pronunciadas, ya que no podemos conocer el tono de voz en que fueron pronunciadas ni la actitud y gestos que pudieron acompañarlas. Como se dice en el caso de *Fisher* v. *Pace*, 336 U. S. 155, 161:

". . . En un caso de esta naturaleza la transcripción del récord no puede trasmitirnos el cuadro completo de lo ocurrido en la corte. No demuestra tales elementos de mala conducta como la expresión, la manera de hablar, talante y actitud del peticionario. Hay que confiar en la equidad y objetividad del juez que preside. El incidente debe considerarse como una unidad con el fin de juzgar propiamente la mala conducta, y la relación del peticionario con un funcionario de la corte no debe perderse de vista."

En el caso de *Ex parte Lastra*, 56 D.P.R. 559, 578, tuvimos ocasión de citar, con aprobación, parecidos conceptos expresados en el de *In re Hallinan*, 14 P.2d. 797, 799, al efecto de que "La oportunidad que tuvo la corte en cuya presencia se cometió el desacato para saber y determinar si los actos o palabras fueron realizados o dichas en menosprecio y desacato de su autoridad, es vastamente mayor que la que podemos tener nosotros por la mera lectura del récord de tales actos o palabras. Los actos y las palabras, al exponerse por escrito, pueden aparecer enteramente inocentes, pero pueden haber sido hechos o habladas en forma tal que constituyan la mayor falta del respeto debido a las cortes mientras se hallan en el cumplimiento de su deber, y del decoro y buen orden que deben observarse en su presencia para permitírseles desempeñar adecuadamente sus funciones. Por esta razón no creemos formular la regla con demasiada rigidez; cuando decimos que una orden que declara culpable de desacato criminal no debe ser revocada a menos que sea manifiesto que ningún desacato

se ha cometido, demostrándose así que la corte ejercitó su autoridad caprichosa, opresiva y arbitrariamente."

██ En el caso de autos no podemos convenir con el apelante en que el récord no demuestra que él incurriera en desacato. Es cierto que en el caso de *Coll* v. *Leake*, supra, resolvimos que las manifestaciones de un abogado, durante la argumentación ante la corte, diciendo que no creía las declaraciones de ciertos testigos, ni aun hechas bajo juramento, no constituían desacato pues el abogado puede atacar la credibilidad de los testigos. La situación aquí es distinta. El apelante tildó de mentiroso al testigo mientras éste declaraba y tenía derecho a ser protegido por la corte, como en efecto lo fué, bajo las disposiciones del artículo 527 del Código de Enjuiciamiento Civil, ed. de 1933 (artículo 165, Ley de Evidencia), el cual provee, en lo pertinente, que "Un testigo tiene derecho a que se le proteja contra las preguntas no pertinentes, impropias o insultantes, y contra toda conducta áspera u ofensiva. . ." Fué después de haber intervenido la corte que el apelante, so pretexto de anotar una excepción, insistió en sus manifestaciones anteriores, ampliándolas en tal forma que de su contexto puede fácilmente colegirse la actitud y tono de voz en que fueron pronunciadas. Eso no obstante, la corte se limitó a decirle al letrado: "Terminado el incidente." Insistió éste en que estaba anotando una excepción(¹) y fué entonces que la corte dijo: "Terminado el incidente. Siéntese el abogado. Márshal, haga sentar al abogado. Siéntese el abogado." Estas frases de la corte tienden a demostrar que el apelante, no obstante la indicación de la corte, no se sentó, y que aun cuando por último aparentemente estuvo dispuesto a hacerlo, contestó: "Yo me siento porque V. H. lo manda, pero. . ." Esta actitud retadora unida a sus manifestaciones anteriores fué lo que la corte consideró constitutivo de desacato y le impuso diez dólares de multa al apelante.

---

(¹) Ya lo había hecho anteriormente, aun cuando de acuerdo con la Regla 46 de las de Enjuiciamiento Civil, las excepciones formales a las decisiones u órdenes de la corte son innecesarias.

Aún en ese momento éste le contesta a la corte: "O diez días de cárcel." Salta a la vista la conducta irrespetuosa del letrado a través de todo este lamentable incidente y no erró la corte inferior al considerarlo incurso en desacato cometido en corte abierta. *Ex parte Lastra*, supra, y casos en él citados. Nada hay en el récord que tienda a sostener la alegación del apelante en cuanto a que la corte actuó movida por pasión y prejuicio. No se cometieron los dos primeros errores señalados.

■■ Por el tercero alega el apelante que el mandamiento de prisión expedido no está firmado por el juez sentenciador, según lo requiere la sección 3 de la Ley de Desacato, la cual en lo pertinente dispone:

". . . Siempre que alguna persona fuere multada o encarcelada por desacato a una corte o a la Comisión Industrial deberá firmarse por el juez o comisionado sentenciador una orden o mandamiento para dicha multa o prisión, consignándose en el mismo el acto o actos constitutivos de dicho desacato, así como la fecha y lugar de su comisión y circunstancias de la misma, con especificación de la sentencia del tribunal, sin lo cual dicha sentencia quedará enteramente nula y sin efecto."

Ya hemos copiado anteriormente la mal titulada "Acusación" que obra en autos y en la cual la corte inferior, después de exponer los hechos realizados por el apelante que consideró constitutivos del desacato, la fecha y sitio de su comisión y la sentencia impuesta, dispuso lo siguiente: "POR TANTO: El Tribunal dispone y ordena que se haga efectiva esta orden de acuerdo con los términos de *esta* sentencia en forma de ley *expidiendo el Secretario el correspondiente mandamiento al Márshal para su ejecución*." (Bastardillas nuestras.)

Esta resolución ordena que se haga efectiva la sentencia en forma de ley expidiendo el secretario el correspondiente mandamiento al márshal. En efecto aparece de los autos una orden de encarcelación firmada únicamente por el secretario y dirigida al alcaide de la Cárcel de Distrito de Mayagüez para que admita al apelante en dicho penal a cumplir la sen-

tencia en defecto del pago de la multa. Hay otro documento, también firmado por el secretario únicamente, dirigido al márshal para que dé "cumplimiento a la orden del Hon. Juez haciendo el diligenciamiento de rigor en relación con los términos de la sentencia, y devolviendo a esta Secretaría constancia de haber diligenciado el presente mandamiento." Fué, pues, el secretario quien expidió el mandamiento en este caso cumpliendo la propia orden de la corte.

Hemos resuelto que la sentencia y el mandamiento a que se refiere la sección 3, supra, son dos documentos distintos, *De Torres* v. *Corte*, 58 D.P.R. 515, 525, y que un mandamiento expedido por el secretario y no por el juez sentenciador, es un acto desautorizado y nulo. *Ex parte Germán*, 64 D.P.R. 397, 400. En este último caso, sin embargo, resolvimos que "considerando que el estatuto no fija término alguno para la expedición del mandamiento u orden de encarcelación, la corte sentenciadora puede y debe hacer cumplir sus sentencias expidiendo una orden o mandamiento de encarcelación de acuerdo con lo provisto por el estatuto."

*Procede, por lo tanto, dejar sin efecto la sentencia dictada hasta que la corte sentenciadora expida una orden o mandamiento de encarcelación de acuerdo con lo provisto en el estatuto y a dicho efecto, se devuelve el caso para ulteriores procedimientos.*