EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO M. SUSONI y TOMÁS TORRES CORTÉS, acusados y apelantes. EL MISMO, demandante y apelado, *v.* TOMÁS TORRES CORTÉS, acusado y apelante.

Números 16004 y 15851.

*Reasignados:* 11 de diciembre de 1957. *Resueltos:* 19 de marzo de 1959.

*Francisco M. Susoni, pro se* y *Pablo Defendini* y *Santos P. Ama-deo*, abogados de los apelantes; *Hon. Secretario de Justicia Hiram R. Cancio (José Trías Monge, Ex-Secretario de Justicia,* en el alegato) y *Rafael L. Ydrach Yordán* y *Ramón Olivo Nieves, Fiscal del Tribunal Supremo* y *Fiscal Especial,* respectivamente, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

El Tribunal Superior, Sala de Arecibo, declaró a los abogados Lcdos. Francisco M. Susoni y Tomás Torres Cortés incursos en desacato y los sentenció a cumplir pena de cárcel de 30 días. Ellos han apelado la sentencia.

Se ventilaba en la Sala de Arecibo del Tribunal Superior el caso seguido por El Pueblo de Puerto Rico contra Pedro Matos Matos por infracción al art. 192 del Código Penal.(¹) El juicio comenzó el día 10 de junio de 1954. Representaban al acusado los abogados Lcdos. Francisco M. Susoni y Tomás Torres Cortés. La defensa anunció que también eran abogados, y pidió que se excusara sus ausencias, los Lcdos. Baltasar Quiñones Elías, José Luis Feliú Pesquera y Archilla Laugier. Constituído el jurado y declarada sin lugar una cuestión de derecho presentada por la defensa, se dió lectura a la acusación, el acusado reiteró la alegación de inocencia y el juez pidió los testigos y ordenó se les tomara juramento. Los testigos se juramentaron, pero del

---

(¹) *"Artículo 192.*—Todo el que de algún modo entorpeciere o estorbare a los miembros de la Junta de Inscripción en el cumplimiento de sus obligaciones, incurrirá en 'felony' y convicto que fuere, será castigado con pena de presidio por uno a cinco años."

récord no aparecen los nombres de los que fueron llamados por una y otra parte.

La primera testigo de cargo, Elba González Álvarez, hizo referencia en el curso de su declaración a la persona de Fundador Rodríguez Viruet y poco después ocurrió lo siguiente, según surge de la transcripción de las notas taquigráficas: (T.E. 112–116)

"A preguntas del Hon. Juez, declaró:—

"P. ¿Usted conoce a Fundador?

"R. Yo lo ví por primera vez aquél día.

"A preguntas del Lcdo. Susoni, declaró:—

"P. ¿Usted lo ha vuelto a ver?

"R. Sí, señor.

"P. ¿Ahora mismo lo está viendo?

"R. Sí, señor.

"P. ¿Dónde está él?

"R. Allá está.

"Hon. Juez:—¿Por qué Fundador está en el salón de la Corte si fue ofrecido como testigo?

"Lcdo. Susoni:—Pido a su señoría excusa, porque he estado de espalda y ahora que su señoría ha hecho esa manifestación sé que está aquí, y yo le di la nota al señor Márshal que tan pronto llegaran los testigos los pusiera bajo las órdenes de la Corte.

"Hon. Juez:—Él no puede preguntarle el nombre a las personas, a todas las personas que entran al salón, ni puede prohibirle la entrada al salón. Eso depende del propósito y de la moral de la persona que viene ahí como testigo. Él ha estado en otros procesos y él sabe que los testigos no van al salón para ver lo que declaran los otros testigos y debe saber la responsabilidad que tiene como tal testigo.

"Lcdo. Torres Cortés:—Nosotros vamos a tomar excepción de las manifestaciones de su señoría.

"Hon. Juez:—Está tomada la excepción. Ahora no me la puede fundamentar con el jurado ahí.

"Márshal:—Yo a los testigos no los conozco. Ahora si . . .

"Hon. Juez:—No hay ninguna explicación del Márshal. El señor entró ahí. El abogado ha pedido una excusa y este hombre debe ponerse bajo las reglas de la Corte.

"Fundador Rodríguez Viruet:—Señor Juez, yo . . .

"Hon. Juez:—Usted no puede hablar e interrumpir los trabajos de la Corte. La Corte le impone cinco dólares de multa o cinco días de cárcel. Márshal, es de usted el acusado. Las damas y caballeros del jurado se van a retirar por un momento en lo que levanta una cuestión de derecho el señor letrado. Márshal, puede retirar a las damas y caballeros del jurado. El señor Torres para llevar al récord la oposición a la manifestación del Tribunal.

"Lcdo. Torres Cortés:—Nosotros consideramos, señor Juez, que las manifestaciones vertidas por su señoría en presencia del jurado en el sentido que uno de los testigos de la defensa al estar presente en la sala del Tribunal estando declarando otro testigo es una cuestión de moral y de condiciones del testigo, que un testigo que sabía y que había presenciado otros procesos debía saber la responsabilidad y el deber que tiene como tal testigo, nosotros creemos que esas manifestaciones lesionan gravemente los derechos de nuestro defendido. Además, vamos a excepcionar que en presencia del jurado se haya condenado por desacato a un testigo de la defensa, que consideramos también que lesiona los derechos de nuestro defendido.

"Hon. Juez:—Se hace constar que el testigo condenado que está mencionando el compañero Torres Cortés, es un testigo que interrumpió el orden de la Corte al hablar en el pasillo del público sin permiso del Tribunal y sin que hubiera sido propia su intervención al Tribunal.

"Lcdo. Susoni:—Señor Juez, creo que vuestro honor no oyó bien al testigo; él le estaba pidiendo permiso al Tribunal. . . .

"Hon. Juez:—El compañero no puede aducir una defensa en favor de ese hombre ahora.

"Lcdo. Susoni:—Su señoría hizo una alusión al testigo en este caso, que es un testigo del caso y que va a declarar, y voy a pedir a vuestro honor que haga la salvedad correspondiente al jurado. El señor Fundador Rodríguez Viruet no entiende que faltó el respeto a su señoría. Cuando él hablaba fue que interrumpió.

"Hon. Juez:—El compañero ha hecho una mala interpretación visual. El compañero está en un error al decir que Viruet estaba pidiendo permiso a la Corte; el testigo habló y después que habló y lo condené por desacato, levantó la mano en señal de pedir permiso como hacen los alumnos en la escuela para que los dejen hablar. Por esa razón es que la Corte lo ha con-

denado por desacato, porque interrumpió el orden, la atención del Juez, porque lo interrumpió con sus manifestaciones. Él no tenía derecho a hablar en absoluto y no se había hecho ningún pronunciamiento en su contra, y se estaba llamando la atención a los abogados de la defensa que había un testigo de defensa en Corte, que se ha averiguado con la declaración de la testigo.

"Lcdo. Susoni:—A los efectos del récord queremos expresar que esas manifestaciones del Magistrado en presencia del jurado, y precisamente con un testigo esencial a la vista del caso, tiende a deprimir la moral del testigo y por ende la credibilidad. Nosotros no cuestionamos la autoridad del Tribunal para mantener el orden y el respeto de la Corte.

"Hon. Juez:—Traiga el jurado."

Al llegar el jurado a sala continuó el interrogatorio de la testigo y terminado el mismo, se recesó hasta el próximo día, 11 de junio de 1954. El jurado quedó bajo la custodia del Márshal.

Las labores siguieron el próximo día declarando varios testigos, y en la sesión de la tarde, mientras la defensa contrainterrogaba al testigo Agustín Massanet, pasó lo siguiente: (T. E. 225–231)

"P. Cuando usted vió aquél movimiento provocado por los hechos que usted ha relatado, ¿había personas que se tiraban por la ventana, no salían por la puerta corriendo?

"R. Por la puerta salían corriendo, por la ventana no.

"P. ¿Usted no declaró anteriormente que había visto personas tirarse por la ventana?

"R. No, señor.

"Hon. Fiscal Ruiz: Él no ha declarado en ningún momento eso. Él no ha dicho que persona alguna se tirara por las ventanas.

"Lcdo. Susoni:—Yo estoy sentando las bases para impugnar la credibilidad del testigo, sentando las bases a través del testimonio de él del primer juicio.

"Hon. Fiscal Ruiz:—Él no puede traer el testimonio del primer juicio; el testimonio del primer juicio está en récord.

"Hon. Fiscal Vera Mercado:—Es a este récord al que estamos haciendo referencia, señor Juez.

"Lcdo. Susoni:—Es un testimonio del testigo, en que de

acuerdo con nosotros queremos sentar las bases; en relación con los mismos hechos y la misma transacción criminal él dió una versión distinta y le pedimos a vuestro honor sentar las bases para traer el testimonio prestado por él en distinta forma.

"Hon. Juez:—¿El testimonio que dio él en Corte abierta?

"Lcdo. Susoni:—En Corte abierta.

"Hon. Juez:—La cuestión es que él tiene derecho a impugnar la declaración del testigo por haber hecho manifestaciones contrarias a las que está haciendo actualmente, en qué época, en qué sitio, en qué circunstancias.

"Hon. Fiscal Ruiz:—Si me permite, señor Juez, y siendo esas manifestaciones las que hiciera el testigo o cualesquiera otras que fueran y constando en documento público, tiene que mostrarle esa declaración. Tiene que dársele oportunidad al testigo para que refresque la memoria, confrontando la declaración anterior del testigo con la que está dando ahora.

"Hon. Juez:—[Asumimos que hablaba el Lcdo. Susoni] Nosotros pedimos el récord del caso; hicimos las gestiones; ahora nosotros tenemos derecho a sentar las bases de acuerdo con la teoría del Pueblo.

"Hon. Juez:—Al Magistrado no se le ha pedido nada desde el inicio de este juicio; al Magistrado se le pidió como una táctica dilatoria que se ordenara al taquígrafo sacar una transcripción de la evidencia producida en el juicio y que hasta que no fuera sacada esa transcripción se pospusiera la vista. La Corte denegó la posposición de vista. En la resolución se hace clara esa situación y se le da oportunidad a que se presentara con la transcripción para venir a juicio si la necesitaba durante el curso del proceso. La Corte declara con lugar la objeción de los Fiscales.

"Lcdo. Susoni:—Respetuosamente tomamos excepción.

"Hon. Juez.—No es la manera de impugnar ni ha sentado las bases ni se ha puesto en condiciones de estar amparado por la ley tal como rige en Puerto Rico.

"Lcdo. Susoni:—A los efectos del récord tomamos excepción a la resolución del Tribunal y a las manifestaciones del Tribunal en cuanto a tácticas dilatorias se refiere; tenemos derecho a pensar que cuando el abogado recurre al Tribunal en una solicitud judicial, lo hace amparado por el criterio que tiene de hacer la mejor defensa de los derechos del acusado y esas manifestaciones en presencia del jurado, entendemos que tienden

a desprestigiar la honesta representación de los abogados en el desempeño de sus funciones como funcionarios del Tribunal.

"Hon. Juez:—Las damas y caballeros del jurado no tienen que juzgar los casos por la honestidad o deshonestidad o por la moral baja o la moral alta de los representantes del acusado. Las damas y caballeros del jurado tienen que basarse en la convicción que llegue a vuestras conciencias a base de la prueba presentada por el Pueblo y presentada por el acusado, no por tácticas de los abogados ni por tácticas del Fiscal. Deben tener esto en mente las damas y caballeros cuando ustedes vayan a juzgar el caso, y en forma alguna deben prejuiciarse contra el acusado.

"Lcdo. Torres Cortés:—Tomamos excepción. . . .

"Hon. Juez:—Si es para esa cuestión siéntese el abogado.

"Lcdo. Torres Cortés:—A los efectos del récord . . .

"Hon. Juez:—Siéntese el abogado o lo castigo por desacato. Pasó el incidente. Le repito que se siente o lo castigo por desacato.

"Lcdo. Torres Cortés:—Es una cuestión nueva, señor Juez.

"Hon. Juez:—Un momentito, retire el jurado. Póngase de pie el compañero. Por cuanto, el abogado Tomás Torres Cortés se levantó de su asiento desobedeciendo la orden de la Corte al darse por terminado el incidente de una excepción tomada por el Lcdo. Susoni, que se tomó a todo su ancho y extensión de acuerdo con la argumentación que hizo el Lcdo. Susoni. Por cuanto, la Corte invitó al compañero Torres Cortés que se sentara y no interrumpiera el procedimiento de la Corte. Por cuanto, el compañero desobedeció obstinadamente y contumazmente la orden del Tribunal. Por tanto, esta Corte cree que el compañero ha desacatado la orden de la Corte y le impone un dólar de multa o en su consecuencia un día de cárcel. La Corte va a dar un receso para los efectos de determinar si se va a cumplir la sentencia. (Receso)

"Márshal:—La Corte reanuda la sesión.

"Lcdo. Susoni:—Quiero informarle a su señoría que ha ocurrido un lamentabilísimo error, y ese error es que la excepción que se iba a tomar en este caso no era la que se había tomado; era a las últimas palabras de vuestro honor. Cuando el compañero se levantó, este abogado iba a hacer lo mismo; iba a tomar excepción a las palabras últimas de su señoría que no fueron motivo de excepción ni de trasplante al récord del Tri-

bunal luego que su señoría dispuso de la cuestión planteada y argumentada por este abogado se dirigió el señor Magistrado al jurado. Confieso que me siento herido por las palabras de vuestro honor al calificar a los abogados en baja y alta moral; creo que he cumplido fielmente siempre sin interrupción en mi vida mi misión como abogado; yo no puedo decir que no me he equivocado, me equivoco a diario; yo le aseguro a vuestro honor que podrá disponer de esta persona en cualquier forma que quiera, pero me siento tan profundamente herido que no puedo continuar en este proceso. No puedo remediarlo en decírselo.

"Hon. Juez:—Me extraña muchísimo que la persona del Lcdo. Francisco Susoni, Jr., joven talentoso, aunque ya está en las postrimerías de la juventud, que siempre ha sido cumplido y caballeroso pueda haber interpretado de una manera tan lamentable la expresión de la Corte, al decirle al jurado que el jurado no tenía que tomar en cuenta las manifestaciones de los abogados o la moral alta o baja de los abogados en los casos, porque ellas no iban dirigidas a los fiscales, a los abogados fiscales ni a los abogados de la defensa. Yo creo que el compañero debe estar seguro de estas manifestaciones, porque yo tengo el valor moral y cívico de sostener cuanto digo y cuanto hago y cuando lo hago cayendo en un error, soy hijo de español, que corre tan directamente en mis venas la sangre española, que en todo momento y en todas las épocas y a través de todos los tiempos he demostrado alteza de miras y yo caballerosamente hubiera corregido el error; de manera, que en la mente del compañero ni en la mente del otro compañero pueda estar la idea de que yo con esas palabras trataba de zaherirlos siquiera. En cuanto a la otra cuestión, que se levantaba para levantar esa excepción, la Corte no puede tomar eso como excusa, porque él debió obedecer la orden de la Corte para que tomara asiento; así que la Corte toma la expresión del compañero como una solicitud de reconsideración y tomándola así la declara sin lugar. Traiga el jurado. ¿Las partes aceptan que el jurado es el mismo y está completo?

"Hon. Fiscal Vera Mercado:—Sí, señor Juez."

"Lcdo. Susoni:—Sí, señor Juez."

La defensa continuó hasta terminar el contrainterrogatorio de este testigo. Declaró entonces la juez, Srta. Gladys Lasa, y la sesión prosiguió durante la noche de ese día 11

de junio. Con el interrogatorio del testigo Juan J. Torres el Pueblo terminó su prueba. La defensa expuso su teoría y sentó a declarar como su primer testigo a Fundador Rodríguez Viruet. Mientras lo contrainterrogaba el fiscal aparece del récord lo siguiente: (T. E. 284-285)

"P. Señor Fundador Viruet . . .

"R. Rodríguez Viruet, me hace el favor.

"Hon. Juez:—Señor, tenga la bondad de dejar las manos quietas sin hacer esa indicación con la mano, porque no es la forma de conducirse en la Corte.

"Lcdo. Susoni:—Nosotros queremos tomar excepción a las manifestaciones de la Corte.

"Hon. Juez:—Hágase constar en récord que el testigo ha levantado la mano izquierda y con el índice ha señalado en forma agria, amenazante al Fiscal, diciéndole que ese no es su apellido, que la Corte ha tenido que llamarle la atención al testigo como se la llama a cualquier persona que no se comporte bien ante su sala.

"Lcdo. Susoni:—Tomamos excepción respetuosamente."

Terminado el examen de este testigo la defensa sentó a declarar a William Pérez. Mientras era contrainterrogado por el Fiscal ocurrió lo que pasamos a transcribir: (T. E. 302-311)

"Hon. Juez:—No en alta voz, para sí.

"P. ¿Usted la leyó?

"R. Sí, señor.

"P. Señor, mire a ver si en esta declaración la señorita Gladys Lasa le pregunta a usted si la discusión, si toda esa discusión fue después de la una de la tarde, y mire a ver si usted a esa pregunta le contestó que la discusión empezó como a las doce y media, pero que como a la una y media aún no se habían puesto de acuerdo, y fue cuando la gente empezó a irse.

"R. Sí, señor, pero ahí hay un punto ahí.

"P. Yo sé que hay un montón de puntos porque hay muchas íes.

"R. Yo me refiero a que no se habían puesto de acuerdo porque hablaban dentro del colegio, pero no que el señor Matos estuviera dentro del colegio a esa hora.

"P.   ¿Usted no le contestó a la Srta. Gladys Lasa que la discusión empezó a las doce y media y que fue a la una y media de la tarde que empezó la inscripción?

"R.   Aunque eso dice en parte ahí, sé que se habían inscrito algunas personas, algunas con el movimiento y el ruido, pero estaba retardada la inscripción, estaba lenta por esa misma causa.

"A preguntas del Hon. Juez, declaró:—

"P.   ¿Por la causa de qué?

"R.   De las personas que habían en el local, el movimiento de las cosas, la misma aglomeración, la misma gente que estaba pegada de las mesas.

"P.   ¿Y sobre la discusión que hubo?

"R.   En ese momento no existía.

"P.   ¿En el momento que hubo esa discusión existió?

"R.   Pero fue antes de la una.

"P.   ¿Entre quiénes fue esa discusión?   ¿La discusión que usted dice ahí, dice el Fiscal que usted dice?

"R.   Fue la cuestión que hubo, porque el señor Matos me llenó la petición, pero entonces él se había salido.

"P.   ¿Con quién discutió él?   ¿Con usted?

"R.   No, señor.

"P.   ¿Con quién discutía?   ¿Yo le pregunto con quién discutió Matos, si Matos discutió?   No se me vaya por la orilla. Tenga la bondad de contestar.

"R.   Tengo que explicar.

"P.   ¿Con quién fue la discusión de Matos, con quién?

"Lcdo. Susoni:—¿Me perdonaría el señor Magistrado?

"Hon. Juez:—Tengan la bondad los compañeros de no interrumpir al Magistrado.

"P.   ¿Con quién discutía Matos, le pregunto yo que aclare? Después hace las aclaraciones.

"R.   Yo no recuerdo.

"P.   ¿No recuerda con quién discutía?

"R.   No, señor.

"Lcdo. Susoni:—Queremos tomar excepción a la forma en que el Magistrado se ha conducido en la repregunta.   Entendemos que es intimidar al testigo en forma tal que le hace imposible poder cumplir la forma en que debe evacuar un testimonio normal, sereno, y tranquilo.   Por el récord aparece que en ningún momento él le ha faltado el respeto al Magistrado.   Sin

embargo, en la forma alta, impetuosa que lo ha hecho su señoría, tiende a amedrentar aquellas personas que normalmente no están acostumbradas a estos procesos.

"Hon. Juez:—Para el récord, quiero decir que el compañero Susoni se ha salido de una realidad, de la verdad, donde deben situarse los abogados y los caballeros, imputando que el Juez ha querido intimidar al testigo. El Juez, si ha alzado la voz ha sido para orientar al testigo y preguntarle con quién discutía Pedro Matos Matos. Yo lamento que el compañero Susoni se haya separado de esa manera tan lamentable de los hechos, porque yo soy incapaz de intimidar a nadie y mucho menos cuando estoy presidiendo una Corte; lo que quiero es que venga a labios de las personas toda la verdad aunque afecte o beneficie a un lado o afecte o beneficie a otro.

"Lcdo. Susoni Lens:—Tomamos excepción respetuosamente.

"A preguntas del Hon. Fiscal Ruiz, declaró:—

"P. ¿Yo le pregunto si es o no cierto que la señorita Gladys Lasa le preguntó a usted . . . . ?

"Hon. Juez:—Un receso que pide el taquígrafo. (Receso)

"Márshal:—La Corte reanuda la sesión.

"Hon. Juez:—¿Los abogados del acusado y los fiscales aceptan que el jurado es el mismo y está completo?

"Lcdo. Susoni:—Sí, señor Juez.

"Hon. Fiscal Ruiz:—Sí, señor Juez.

"Lcdo. Susoni:—Señor Magistrado, deseo informar a vuestro honor que en este momento me retiro de este caso. No puedo seguir trabajando bajo estas circunstancias y estoy a disposición de su señoría para cualquier sanción que pueda imponerme.

"Hon. Juez:—¿Se siente enfermo?

"Lcdo. Susoni:—No me siento enfermo físicamente. Me siento enfermo espiritualmente y moralmente; estoy en tal situación que no puedo continuar el caso.

"Hon. Juez:—La enfermedad espiritual no puede cohibir a la inteligencia y entereza de carácter y la responsabilidad de un abogado, ni puede palidecer la obligación del compañero. La obligación del compañero es asistir a este acusado mientras se termine el juicio, y hubo el compromiso que trabajaríamos toda la noche y nos sacrificaríamos por complacer al abogado del acusado. No obstante, si el compañero se siente enfermo física-

mente, la Corte no tiene inconveniente en posponer la vista de este caso para cuando pueda razonablemente el compañero.

"Lcdo. Susoni:—No es físicamente. Yo estaba en condiciones de trabajar toda la noche y en el día de mañana. Solamente las circunstancias que han ocurrido en este proceso me han puesto en una situación anímica tal y no me encuentro en posición de cumplir con mi deber, tal como me lo impone el deber de responsabilidad.

"Hon. Juez:—La Corte cree que no hay motivo para que el compañero no se sienta en condiciones de continuar en la defensa de su representado. La Corte no puede darle permiso al compañero para retirarse. La Corte lamenta que el compañero tome una resolución de esa naturaleza, porque ha de comprender que sería perjudicial para la administración de justicia, habría que demorar un caso, despachar un jurado, hacer un receso, sin justificación alguna. Además, quiero aclarar, si dijera algo que afectare al compañero, que encuentro que no lo hay, que afectare personalmente al compañero, y que el compañero pueda sentirse irritado por eso, sabe que de esa irritación no se podría inculpar a un acusado, que debe considerarse inocente, y hay tiempo suficiente y oportunidad suficiente para discutir esos razonamientos, esas cuestiones que hayan podido producir irritación en una y otra persona. Yo creo que es una cuestión clara que he propuesto al compañero, y el compañero debe continuar asistiendo al acusado y asimilar cualquier cosa que haya el compañero creído que haya podido mortificarlo, y luego de recibir la explicación que le he dado.

"Lcdo. Susoni:—He llegado hasta este momento haciendo el esfuerzo, y le confieso a vuestro honor que no puedo continuar.

"Hon. Juez:—La Corte siente muchísimo, por esa sola razón no lo puede excusar de la asistencia de este acusado.

"Lcdo. Susoni Lens:—Entonces su señoría puede hacer el pronunciamiento que guste.

"Hon. Juez:—El pronunciamiento es que el compañero continúe cumpliendo con su deber asistiendo al acusado, digo, si no se siente físicamente imposibilitado.

"Lcdo. Susoni Lens:—No puedo continuar, señor Juez.

"Lcdo. Torres Cortés:—Nuestra posición es idéntica a la del compañero Susoni. También anunciamos que nos retiramos de este caso por las circunstancias creadas durante el proceso y estamos a vuestra disposición también.

"Hon. Juez:—¿Se han dado cuenta los compañeros del alcance que tiene eso profesionalmente?

"Lcdo. Susoni:—Plenamente, señor Juez.

"Lcdo. Torres Cortés:—Plenamente, señor Juez.

"Hon. Juez: La Corte ordena que continúe el caso. Un momentito, compañero: Márshal, tenga la bondad de traer los compañeros a estrado.

"Hon. Fiscal Vera Mercado:—Con la venia del Tribunal, vamos a solicitar del Tribunal un receso.

"Hon. Juez:—¿Por qué razón? ¿Qué fundamento tiene el señor Fiscal para pedir un receso?

"Hon. Fiscal Vera Mercado:—Retiramos esa moción y vamos a pedir al Tribunal que ordene que se retire el jurado.

"Hon. Juez:—El jurado puede retirarse. Márshal, que se retire el jurado. ¿Cuál es la moción?

"Hon. Fiscal Vera Mercado:—Un receso, señor Juez.

"Hon. Juez:—¿Fundamentado en qué?

"Hon. Fiscal Vera Mercado:—En que la situación surgida de momento, pues ha creado posiblemente excitación de ánimos y sugeriríamos al Tribunal muy respetuosamente, y así lo hacemos, un receso en lo que se calman un poco los ánimos.

"Hon. Juez:—Yo creo que las personas que estamos trabajando aquí somos personas cultas y deben dominar sus impulsos y continuar cumpliendo con su deber de acuerdo con su talento y su responsabilidad le dicte. Me parece que es una cuestión sencilla, corriente. Aquí ha sucedido que el abogado Susoni le hizo una imputación al Juez y el Juez la contestó como quería. Eso está en el récord. Personalmente entre el señor Susoni y yo esa es una cuestión que no tiene que ver con nuestros deberes por el mandato que tenemos como abogado y después por el juramento que hemos prestado de cumplir con nuestro deber de Juez. Yo creo que no hay motivo para otra cosa, a menos que no sea algo fuera de juicio y fuera de la normalidad que pueda imperar en un hombre de talento. Receso.

"Márshal:—Receso del Tribunal.

"Hon. Juez:—Se reanuda la sesión. La Corte ordena al señor Márshal del Tribunal que no permita salir a los Fiscales ni a los abogados del edificio del Tribunal hasta que el Tribunal no termine en definitiva su trabajo. Receso.

"Márshal:—La Corte reanuda la sesión.

"Hon. Juez:—¿Están listas las partes para continuar?

"Hon. Fiscal Vera Mercado:—Sí, señor, estamos listos, señor Juez.

"Hon. Fiscal Ruiz:—Estamos listos.

"Hon. Fiscal Vera Mercado:—Con la venia del Tribunal, en vista que son las tres menos cuarto de la madrugada y hemos estado trabajando durante todo el día de hoy excepto con ligeros recesos para almorzar y comer y en vista además que el taquígrafo del Tribunal Sr. Chacón se nos ha quejado que tiene la mano cansada de tanto tomar signos taquigráficos, muy respetuosamente solicitamos que se suspenda la vista de este caso hasta el lunes próximo a las 9 de la mañana.

"Hon. Juez:—Si hay allanamiento de la otra parte.

"Lcdo. Susoni:—No hay objeción.

"Hon. Juez:—¿El acusado está conforme con el acuerdo de los abogados?

"Acusado:—Sí, señor.

"Hon. Juez:—Tráigase el jurado. (Llega el jurado a estrado) ¿Las partes aceptan que el jurado es el mismo y está completo?

"Hon. Fiscal Vera Mercado:—Sí, señor juez.

"Lcdo. Susoni:—Sí, señor Juez.

"Hon. Juez:—Hay una resolución pendiente de la Corte en cuanto a la posposición del caso para el lunes a las 9 de la mañana. Las dos partes han estado acordes en esta posposición; la Corte va a resolverla favorablemente a tono con la solicitud, y el testigo queda citado para el lunes a las 9 de la mañana, que deberá estar aquí en Corte para ocupar la silla nuevamente. ¿Qué testigos quedan, Márshal?

"Márshal:—Dos testigos.

"Hon. Juez:—Esos testigos deben ser citados para el lunes a las 9 de la mañana; asimismo quedan citados los abogados, los testigos y los Fiscales. Como la Corte había tenido al jurado restringido, yo quiero pedir consentimiento de las partes para que el Jurado pueda retirarse a sus hogares; de no haber entendido entre las partes la Corte tendría que dejar al jurado sujeto a las reglas que había estipulado al principio.

"Lcdo. Susoni:—De parte de la defensa no hay objeción.

"Hon. Fiscal Ruiz:—De parte del Pueblo tampoco.

"Hon. Juez:—Entonces ustedes pueden retirarse a sus hogares. Ambas partes han concedido que se retiren. Desde luego, con las mismas amonestaciones que el Tribunal ha venido haciendo diariamente."

Al reanudarse la sesión el lunes 14 de junio de 1954 a las 9 de la mañana el Juez manifestó que había comparecido el acusado y los abogados que estaban actuando durante la vista del caso. Copiamos de la transcripción de las notas taquigráficas: (T. E. vista del 14 de junio de 1954, págs. 2–6)

"Abogado Sr. Susoni:—El viernes a las 3¼ de la mañana comparecimos al tribunal en corte abierta en el entendido de caballeros, entre fiscales y los abogados, de que habríamos de participar en el reconocimiento de la entidad del jurado y la moción de suspensión que los fiscales proponían hacer a esa hora del día sábado. Accedimos a esa actuación nosotros en la representación que ostentábamos bajo el entendido de que no se entendería que nuestra posición había variado en forma alguna, lo que manifestamos en el día de hoy a los fines de que no haya una laguna en el récord. Como no hubo explicación alguna de nuestra comparecencia el sábado, que se entendiera como que nosotros habíamos reanudado nuestra representación, queremos decir que la posición de los abogados en el día de hoy es la misma, y solicitamos permiso del tribunal para retirarnos.

"Hon. Juez:—Aclarando las manifestaciones del compañero Susoni, la Corte quiere hacer constar que en el récord no se hizo ninguna estipulación condicionada a que esa situación de los compañeros y del acusado en el día de hoy lunes para la cual se fijó la continuación de la vista sería la misma condición que existiera. ¿Pero debemos entender entonces que el señor Susoni se ratifica y reproduce su actitud de la madrugada del sábado, o sea, de la noche del viernes a amanecer sábado, en el sentido de que se retira de la representación del acusado?

"Abogado Sr. Susoni:—Yo lamento que los compañeros fiscales no hubieran impuesto a V. H. de las palabras que reiteradamente convinimos y lo lamento profundamente porque de lo contrario lo hubiéramos hecho constar en récord como lo estamos haciendo constar ahora. Lo hicimos para que no entendiera que iba a ser una reproducción, sino que era la misma situación del viernes y así lo ratificamos con todo el respeto a V. H.

"Hon. Juez:—La aprobación de la estipulación de la Corte fue a viva voz. Así fue la moción del fiscal y a viva voz fue el allanamiento del compañero. Y la Corte, después de consul-

társele tanto a los abogados de la defensa como a los fiscales, si esa era la estipulación y de dar su asentimiento, la Corte la aprobó, y no constaba nada del récord. La Corte estuvo bajo el entendido de que las partes comparecerían hoy después de haber meditado sobre los incidentes y sobre la actitud en aras de que no se afectaran derechos de otras partes, derechos de El Pueblo de Puerto Rico, de la comunidad del pueblo de Puerto Rico y derechos del acusado, que están en discusión, y entendía el Juez que los compañeros habrían de recapacitar y pensar que cuestiones personales, lesiones que hayan podido entender en sus susceptibilidades que se les afectaría su personalidad o prestigio a su capacidad, el derecho de las partes, etc. etc., habrían de resolverse de otro modo, esto es, a través de réplica, a través de una revisión, todo a tono y en armonía con las disposiciones de la ley. Y pensando este Juez ahora mismo que a una mente avanzada, a un hombre inteligente y culto como el abogado Susoni y como lo es no menos culto e inteligente el abogado Torres Cortés, todavía hay tiempo, todavía hay tiempo para meditar intelectual y sentimentalmente de que esta posición es una posición única, difícil, que pondría a todas las partes en condición de actuar con resultados tal vez que no fueran puramente satisfactorios y armonizantes, no entre las mismas partes que intervienen, sino en la comunidad que ese Supremo Juez está observando, que; está meditando, y que juzga a todos aunque sea silentemente y sin derecho de revisión o apelación en el sentir y pensar de los ciudadanos, de todos los ciudadanos que observan a hombres públicos, los lleva de la mente al corazón y a la conciencia y de la conciencia lo revierte a la mente, y así se van juzgando sin darles oportunidad de defenderse, no debemos dar lugar a eso. Yo invito a los compañeros, no sólo en el terreno de Juez, sino en el terreno de abogado y de caballero, que mediten y no se pongan ustedes en una situación en que la Corte tendría que actuar a tono con la ley. Tenemos las 12:20 del mediodía. La Corte les va a dar a los compañeros hasta la una y media de la tarde para que ustedes recapaciten nuevamente, estudien todas las cuestiones suscitadas y se den cuenta que están en un país de ley, que los códigos están abiertos, que las doctrinas son puertas expeditas para todas las personas, y que cualquier error que produzca un tribunal puede ser subsanado por un tribunal superior. No sólo un error que afecte a un acusado, sino un error del juez administrador de la justicia también es revisable, y el Tribunal Supremo, en

sus libros amarillos hace constar lo bueno y los errores de los jueces inferiores. Por nuestra parte, esa medida la encuentro muy saludable, la aplaudo, y me produce satisfacción toda vez que no se me ha dado una revocación de una sentencia en los tres años que llevo. El día que venga una revocación me alegraría de ella porque aprendería más. Sería una doctrina nueva que pondrían en mis manos, y mi corazón y mi conciencia sabrían hacer uso de ella para casos futuros. Así es que vamos a darle hasta la una y media de la tarde a los compañeros abogados para que mediten sobre esta cuestión. La Corte, dada la hora, 12:21 del día, recesa para conocer de este caso a la una y media. Así, pues, los fiscales, los abogados y el señor acusado, quedan formalmente citados para comparecer a la una y media de la tarde a esta corte y a esta sala. Receso hasta la una y media de la tarde. Testigos, abogados y acusados que hubieren sido citados en cualquier otro caso quedan citados y el que no compareciere será castigado por desacato."

A las dos de la tarde continuó el juicio y el jurado compareció a sala. El Juez anunció que estaban presentes el acusado y sus abogados, preguntó si las partes estaban acordes en que el jurado era el mismo y estaba completo, el fiscal contestó que sí y el Lcdo. Susoni dijo: (T. E.—vista del 14 de junio—págs. 7–16.)

"Abogado Sr. Susoni:—Antes de hacer alegación alguna queremos informar, antes de hacer alegación alguna en cuanto al Jurado, que nosotros nos ratificamos en nuestra posición de esta mañana.

"Hon. Juez:—Independientemente de la ratificación, preguntamos si las damas y caballeros, que son 14, son los mismos jurados que estaban actuando en el caso.

"Abogado Sr. Susoni:—No tenemos inconveniente.

"Hon. Juez:—¿Los testigos de El Pueblo y de la defensa están bajo las reglas de la Corte?

"Sr. Sub-márshal:—Los de defensa.

"Hon. Juez:—¿Qué testigo quedó en el contrainterrogatorio del fiscal?

"Hon. Fiscal Ruiz:—Estábamos repreguntando al segundo testigo de la defensa.

"Hon. Juez: Corresponde continuar la repregunta.

"Abogado Sr. Susoni:—Pedimos permiso para retirarnos.

"Hon. Juez:—La Corte no les puede dar permiso para retirarse porque están en la representación de este acusado en este caso que se ha comenzado y ha pasado toda la prueba de El Pueblo y se evacuaba la prueba de defensa.

"Abogado Sr. Susoni:—Nosotros hemos expuesto las razones por las cuales no podemos continuar en el caso y suplicamos al tribunal que disponga lo que crea necesario porque no hemos de entender en la representación del caso. Si por fuerza nos tenemos que quedar, nos quedaríamos, pero el acusado no estará representado por nosotros.

"Hon. Juez:—La Corte les ordena que se queden en la representación del acusado ejerciendo las funciones que venían ejerciendo como abogados defensores de él, porque esa es la obligación vuestra como abogados, y resultando, de acuerdo con la jurisprudencia de Puerto Rico, de que los abogados son oficiales de la Corte, la Corte les ordena a ustedes compañeros, amigos y abogados, que como oficiales de la Corte continúen en el cumplimiento de su deber representando al acusado.

"Abogado Sr. Susoni:—Queremos informar muy respetuosamente al magistrado, que le hemos expuesto la razón por la cual no podemos continuar y nos retiramos del caso. Si se nos obliga por la fuerza, nos quedaremos aquí, pero no estará el acusado representado por estos abogados.

"Hon. Juez:—La Corte no trata ni tratará de hacerles quedar por la fuerza, por la fuerza de la fuerza, sino que invoca de vuestras inteligencias y de vuestras conciencias que se queden por la fuerza de la razón y por la fuerza del deber que ustedes, como abogados y oficiales de la Corte, no deben permitir que palidezca el concepto alto que se tiene de los abogados cuando están ejerciendo sus funciones de abogado. Esa es la única fuerza que les impone a ustedes, compañeros, que cumplan con su deber defendiendo al acusado cuando comenzaron hace dos o tres días a representarle y defenderle.

"Abogado Sr. Susoni:—Ese es el criterio de V. H. que respetamos mucho, y por esa misma razón entendemos que no debemos quedarnos en este caso porque no podemos.

"Hon. Juez: No debemos insistir más, ni discutir, porque les he tendido el puente de la amistad, les he tendido el puente de la comprensión, en una bandeja de plata llena plena de hidalguía. Este Juez se ha dirigido a ustedes en evitación de problemas difíciles para ustedes y para la comunidad y para el señor

acusado. Si ustedes no quieren hacer uso de esa bandeja de plata repleta de hidalguía y de persuación, la Corte tendrá que actuar a tono con la ley. Así es que adelante el juicio.

"(Los dos abogados del acusado se retiran de la mesa de los abogados hacia el público).

"Hon. Juez:—No se retiren de ahí. Márshal, pase al estrado a los compañeros. Páselos adentro del estrado. (El márshal hace comparecer al Lcdo. Torres Cortés). Pase el Lcdo. Susoni. Venga acá. (Comparece el Lcdo. Susoni). Damas y caballeros del Jurado, retírense por un momento.

"(Se retiran los señores del Jurado del salón de sesiones).

"Hon. Juez: ¿Los compañeros insisten en esa actitud?

"Abogado Sr. Susoni: Sí, señor.

"Abogado Sr. Torres Cortés: Sí, señor.

"Hon. Juez: ¿Desobedecen la orden de la Corte de continuar en la representación del acusado?

"Abogado Sr. Susoni:—Para obedecer una orden superior, que es la imposibilidad de uno poder representar adecuadamente al acusado.

"Hon. Juez:—¿Se encuentra enfermo físicamente?

"Abogado Sr. Susoni:—Físicamente no.

"Hon. Juez:—¿El otro abogado se encuentra físicamente imposibilitado?

"Abogado Sr. Torres Cortés:—Físicamente no.

"Hon. Juez:—La Corte va a dictar la siguiente orden:

Acto seguido el Juez procedió a sentenciar a los abogados por desacato imponiéndoles 30 días de cárcel. Los procedimientos continuaron así:

"Hon. Juez:—En este caso G 52–131, contra Pedro Matos Matos, el acusado está presente en la silla que ocupaba, pero está huérfano de representación legal debido a que los dos compañeros que lo representaban se retiraron de la defensa. ¿El señor acusado quiere decir algo en relación con esa situación?

"Acusado Sr. Matos: Yo realmente no soy abogado y nada puedo decir en esta situación..

"Hon. Juez:—¿Usted protesta de esa actitud o se une a esa actitud?

"Acusado Sr. Matos:—Todo cuanto puedo hacer es informar al tribunal, que realmente para mí los abogados siguen siendo mis abogados.

"Hon. Juez:—¿Ellos dos con los demás continúan siendo sus abogados?

"Acusado Sr. Matos:—La cuestión legal que se levanta es completamente anormal para mí porque no soy abogado. No sé en qué forma puede afectarme a mí adversamente o favorablemente cualquier información que yo haga y vaya a parar al récord del caso. Por esas circunstancias yo preferiría que el tribunal me concediera tiempo suficiente para yo poderme asesorar con algún abogado o con alguien porque yo realmente. . . .

"Hon. Juez:—La Corte pretende únicamente, no es que vaya a hacer exposiciones que le puedan afectar o no, le advierte, desde luego, que en cuanto a lo que proyecta la Corte en relación con usted es enterarse de si está conforme o no está conforme con esta actitud de sus abogados y le quiere decir que la Corte lo inmuniza en el sentido de que cualquier manifestación que pueda hacer que crea que le afecta en el caso no podría tomarse en su contra.

"Acusado Sr. Matos:—En cuanto a la actitud de mis abogados yo ciertamente, con el respeto del tribunal, puedo manifestar que estoy de acuerdo con la actitud de mis abogados.

"Hon. Juez:—Usted dice que los abogados son sus abogados. Yo quiero ver si entiendo mal para que usted me aclare. ¿Quiere decir que insiste en que ellos sean sus abogados más el otro abogado?

"Acusado Sr. Matos:—No, señor. Porque para yo insistir en que fueran mis abogados tendría, para insistir en que continuaran con la defensa del caso, tendría que ir contra lo que acabo de manifestar al tribunal. Yo entiendo que además del abogado Susoni y del abogado Torres Cortés, tenía o tengo en el récord al abogado Luis Archilla Llaugier* y entiendo que aunque él no está en condiciones de comparecer al tribunal en vista de las obligaciones que tiene en las vistas públicas en el Capitolio, yo entiendo o debo entender que es mi único abogado en este momento él, toda vez que los otros dos han renunciado mi representación, y en vista de que yo coincido, con el respeto nuevamente del tribunal, con los puntos de vista de mis abogados que acaban de retirarse.

"Hon. Juez:—Baje al Jurado, márshal."

---

* Así aparece en el récord.

Al regresar el jurado el Juez les instruyó que se pospondría la continuación del caso hasta el miércoles, día 16, e informó al acusado que quedaba notificado de que el caso continuaría en esa fecha, que debía ponerse al habla con sus abogados a los efectos de que lo vinieran a asistir y ordenó la citación de todos los abogados de récord.

El día 16 de junio de 1954, al llamarse el caso, el Juez ordenó se uniera a los autos un telegrama del Lcdo. Luis Archilla Laugier informando la imposibilidad de comparecer por estar en una Comisión Legislativa. Se suspendió la sesión hasta las dos de la tarde y a esa hora se llamó el caso. El acusado manifestó al Juez que él no tenía abogado y que los abogados Susoni y Torres Cortés que estaban actuando se habían retirado. Al preguntarle el Juez qué ocurría con sus otros abogados de récord el acusado manifestó que él tenía la impresión que eran abogados suyos porque habían intervenido en el primer proceso. El Juez dijo entonces que no era posible celebrar el juicio sin abogado y pospuso la continuación de la vista por un término razonable a los efectos de que el acusado pudiera conseguir asistencia legal. No obstante le nombró como abogados de oficio a los Lcdos. Luis Archilla Laugier y José Luis Feliú Pesquera, y además a los abogados Lcdos. Antonio Reyes Delgado, Diego E. Ramos y Luis Pérez Matos para que lo asistieran y lo defendieran. Ordenó el Juez que en vista de que los demás abogados, con excepción de Luis Archilla Laugier, desconocían los detalles y pormenores de la prueba, los taquígrafos debían sacar una transcripción fiel y exacta de todas las declaraciones de los testigos para que les suministraran una copia a cada uno de los abogados nombrados, ordenándoles que comenzaran inmediatamente sus trabajos de transcripción y exonerándolos de asistir a Sala para que pudieran cumplir con dicha orden. La continuación del caso se señaló para el 21 de junio a las 9 de la mañana y el acusado quedó formalmente citado para esa fecha. Al traerse de nuevo el jurado a Sala el Juez le

preguntó al acusado si eran las mismas damas y caballeros que estaban constituídos manifestando el acusado que él temía hacer declaraciones para la Corte porque no estaba representado por un abogado y temía incriminarse. El Juez instruyó al jurado que se iba a posponer la vista para el 21, les hizo las amonestaciones de rigor y permitió que se retiraran a sus hogares. (T. E.—vista de junio 16—págs. 16–26)

El 21 de junio se reanudó el caso. El Lcdo. Reyes Delgado, uno de los abogados de oficio nombrados por el tribunal, argumentó una moción radicada por escrito para que se disolviera el jurado alegando en términos generales la posición de desventaja en que se encontraba la defensa del acusado al tener que continuar la misma sin ser ellos los que determinaran la teoría de la defensa, así como la desventaja en que se encontraban y se encontrarían en los informes por no haber ellos oído y visto declarar a los testigos que ya habían desfilado. Otra de las razones expuestas era que el jurado había estado retirado por demasiado tiempo expuesto a enterarse de pormenores del caso por la prensa o por cualquier otro medio. El Juez concedió a las partes términos para radicar memorándums en apoyo de sus contenciones y en definitiva declaró sin lugar la solicitud. Se pospuso el caso hasta el 28 de junio de modo que los abogados tuvieran oportunidad de leer la transcripción taquigráfica de la prueba ya desfilada. En esta última fecha, a las 4 de la tarde, continuó finalmente el interrogatorio del testigo William Pérez que quedó interrumpido en la madrugada del 11 al 12 de junio, cuando comenzó el incidente sobre el retiro de los abogados de la defensa. (T. E.—vista de junio 28—págs. 27–50.) Hasta aquí los hechos que, aún a costa de extender esta opinión, preferimos relatar literalmente del récord evitando así, siquiera inconscientemente, énfasis u omisiones interpretativos.

Tres son los errores levantados por los letrados apelantes:

(1) Que el Juez sentenciador debió inhibirse en el proceso de desacato; (2) que abusó de su discreción al imponerles pena de cárcel, y (3) que erró al condenarlos porque su actuación, bajo las circunstancias, no constituyó desacato.

■■ El primer error no fue cometido. La Ley de 1º de marzo de 1902 "Definiendo el Delito de Desacato y Disponiendo la Pena Correspondiente", según quedó enmendada por la Ley 102 de 12 de mayo de 1937—33 L.P.R.A. secs. 517–519—autorizó en su sec. 1 a las cortes de distrito [Tribunal Superior] a castigar por desacato los actos siguientes:

"       *       *       *       *

"(2) Obstinada desobediencia, u oposición intentada o realizada contra cualquier decreto, mandamiento u *orden legal*, expedido o dictado por algún tribunal en un pleito o proceso de que estuviere conociendo. . . ." Dispuso en la sec. 3 que cuando el desacato se comete a la inmediata presencia y vista de una corte de justicia . . . podrá imponerse en el acto el correspondiente castigo *por el juez* de la corte o juez presidente de la misma, y que cuando se acuse a una persona de desacato cometido fuera de la presencia de la corte . . . no podrá declarársele convicta sin habérsele dado previamente oportunidad para comparecer y defenderse del cargo.(1)

Partiendo del supuesto que fue desacato la actuación de los letrados apelantes al retirarse del juicio en las circunstancias que demuestra la transcripción de los procedimientos

---

(1) El art. 7 del Código de Enjuiciamiento Civil (ed. 1933), 32 L.P.R.A. sec. 44, dispone:

"Toda corte tiene poder:

"1. Para mantener y asegurar el orden en su presencia;

"2.       .       .       .       .       .       .       .

"3. Para disponer que se tramiten con arreglo a la ley los procedimientos ante ella o ante sus funcionarios;

"4. Para hacer cumplir sus sentencias, *órdenes y providencias* . . .

"5. Para dirigir en bien de la justicia, *la conducta de sus funcionarios* y de las demás personas que tuvieren algún interés en cualquier procedimiento judicial seguido ante ella, o actuación perteneciente a dicho procedimiento." Véanse arts. 28 y 29—32 L.P.R.A. secs. 162, 163.

reproducida, el desacato se cometió en la inmediata presencia y vista de un tribunal de justicia en el curso de un juicio, y el castigo ha de imponerse por el juez de la corte o juez presidente de la misma, según lo dispone la sec. 3 de la Ley de Desacato. El pretender los apelantes que el juez sentenciador debió inhibirse, ello equivaldría a considerar este desacato como uno indirecto, de los cometidos fuera de la presencia del tribunal, en cuyo caso habría que instituir una querella formal en su contra con oportunidad de comparecer y defenderse del cargo. Cf: *In re Casanova*, 65 D.P.R. 226; *In re Castro*, 52 D.P.R. 139; *Pueblo v. Valldejuli*, 59 D.P.R. 119; Witkin, *California Procedure*, vol. 2, pág. 1728 et seq, *Contempts during Trial*. Cf: *Nye v. United States*, 313 U.S. 33.

Argumentando este error los letrados traen a colación la conducta del Magistrado, e invocan la doctrina sentada en *Offutt v. United States*, 348 U.S. 11, (1954) 99 L. ed. 11. Conociéndose la conducta profesional aquí envuelta, no es necesario un extenso análisis para concluir que esa decisión es inaplicable. Veamos lo que ocurrió en el caso de *Offutt*, el cual tiene sus raíces en *Sacher v. United States*, 343 U.S. 1 (1952) 96 L. ed. 717:[2] Al terminarse el juicio criminal

---

[2] En el caso de *Sacher*, finalizado ya el juicio de *Dennis v. United States*, 341 U.S. 494 (1951) 95 L. ed. 1137, el juez que presidió la vista sentenció a varios abogados por desacato bajo la Regla 42(a) de las de Procedimiento Criminal Federal, a base de la conducta observada por ellos durante la vista. La Corte de Apelaciones sostuvo la convicción, aunque no en todos los cargos, y el Tribunal Supremo se negó a revisar. 341 U.S. 952. Posteriormente expidió certiorari sobre la cuestión única de si la imputación de desacato, según y cuando fue hecha, era una de las que el propio juez estaba autorizado a castigar bajo la Regla 42(a), o si era una que debía tramitarse ante otro juez con notificación previa, vista, y oportunidad de comparecer y defenderse.

El Juez Sr. Jackson, hablando por la mayoría del Tribunal, describió la situación como la de nueve meses *turbulentos* de juicio. Haciendo referencia a la decisión de la Corte de Apelaciones, dijo que el Juez Learned Hand había catalogado la conducta de los abogados como una concertada y voluntariamente obstruccionista, incluyendo persistentes coloquios obstructores, objeciones, argumentos y muchas imputaciones infundadas contra

de *Peckham* v. *United States*, 210 F.2d 693, se castigó sumariamente al abogado Offutt bajo la *Regla 42 (a)* de Procedimiento Criminal Federal por conducta observada hacia el juez durante el juicio. La Corte de Apelaciones sostuvo la convicción, (208 F.2d 844) pero rebajó el castigo de diez días de prisión a 48 horas, considerando que la conducta del abogado no podía aquilatarse con independencia de la del juez, y que cada uno respondió a gran provocación de parte del otro.(³) La sentencia de *Peckham* fue revocada porque la Corte de Apelaciones concluyó que la conducta del juez

la corte; que el Juez Frank manifestó que los cargos sostenidos lo fueron debido a la conducta ultrajante de los abogados—conducta de tal naturaleza que ningún abogado viene obligado para con su cliente, que nunca puede ser justificada y que nunca había sido observada por abogados de minorías o de causas impopulares . . .—; y que el Juez Clark, quien habría revocado toda la sentencia debido al procedimiento, expresó que para uno aleccionado en las tradiciones Anglo-Sajonas de decoro legal, la resistencia de estos abogados en varias ocasiones a los dictados del juez inevitablemente aparecía abominable. En opinión de la Corte de Apelaciones (183 F.2d 201) la cual encontró infundadas las imputaciones contra el juez, la situación era una en que se había efectuado todo aquello que contribuía a hacer imposible una disposición ordenada y rápida del caso: —un juez penosamente puesto a prueba por muchos meses de agitación, constantemente provocado por disputas inútiles, expuesto a desaires ofensivos e insultos, molestado con interminables repeticiones, que si en algún momento no se condujo con la imperturbabilidad de un "Rhadamanthus", demostró un dominio de sí mismo y una paciencia mayor de lo que a los más de los jueces les es dado poseer.

El Tribunal Supremo sostuvo la facultad del juez sentenciador para imponer el castigo sumariamente, aún cuando lo hiciera posteriormente al finalizarse el procedimiento y no inmediatamente después de la conducta ofensiva de aquellos abogados. El Juez Sr. Frankfurter, en una amplia opinión en la que abogó por la norma sentada por el Juez Presidente Taft en *Cooke* v. *United States*, 267 U.S. 517, sostuvo que en circunstancias como esas en que se trataba de ataques e insultos al juez se servía mejor los fines de la justicia bajo la Regla 42(*a*) el que otro juez se sentara a pasar juicio sobre la conducta. Los Jueces Sres. Black y Douglas concurrieron con este criterio, aunque sostuvieron que los acusados deberían tener derecho a que un jurado dirimiera los hechos. En *Offutt*, el Juez Sr. Frankfurter expresa por la mayoría del Tribunal un criterio en línea con su pensamiento en *Sacher*.

(³) La conducta del abogado se expone en 208 F.2d a la pág. 843, y la del juez, como apéndice a *Peckham* v. *United States*, en 210 F.2d a la pág. 703.

hacia el abogado impedía sostener la convicción como un producto de un juicio justo e imparcial. Siguiendo la norma de *Cooke* v. *United States,* 267 U.S. 517, y aplicando su poder supervisor sobre la judicatura federal, el Tribunal Supremo revocó la convicción sumaria de Offutt bajo la Regla 42 (*a*), y reafirmó como mejor doctrina que en casos de esa naturaleza en que está envuelto el ataque personal o la conducta ofensiva del abogado hacia el juez, o conducta de ambos, el castigo sumario que permite la Regla 42 (*a*) debe administrarse por otro juez que se siente a juzgar los hechos. (4)

Aparte de que la norma sentada en *Offutt* bajo el poder supervisor del Tribunal Supremo sobre la judicatura federal define una regla de procedimiento para las cortes de Estados Unidos, la situación en el presente caso es distinta. A los fines del planteamiento procesal que consideramos, las actuaciones de los letrados apelantes no guardan semejanza con la de los abogados en ese caso o en el de *Sacher* y otros casos por el estilo. Cf: *MacInnis* v. *United States,* 191 F.2d 157, *cert. denegado,* 342 U.S. 953; *Hallinan* v. *United States,* 182 F.2d 880, *cert. denegado,* 341 U.S. 952. Aquí no existe, ni se imputó a ellos, comportamiento ofensivo o irrespetuoso de su parte hacia el Magistrado que presidía la vista; ni la sentencia de desacato fue impuesta para vindicar el decoro y el prestigio de un tribunal mediante ofensas a la persona del juez que lo presidía. Surge de los hechos expuestos que estamos ante otra clase de conducta profesional—la obstinada y consciente desobediencia de los letrados a las reiteradas órdenes del tribunal prohibiéndoles que se retiraran del caso y de la corte en medio del proceso—conducta que de acuerdo con nuestro estatuto de desacato y en universalidad del cri-

---

(4) A tono con este pronunciamiento, Offutt fue juzgado dos veces en la corte de distrito por conducta injuriosa u ofensiva al tribunal. Cf: *Offutt* v. *United States,* 232 F.2d 69, *cert. denegado,* 351 U.S. 988. La Corte de Apelaciones finalmente confirmó la sentencia a base de tal conducta y redujo la pena de 48 horas a 6 horas de reclusión. *Offutt* v. *United States,* 247 F.2d 88, *cert. denegado,* 355 U.S. 856.

terio de las cortes es de imperiosa necesidad que se castigue sumariamente sin las formalidades de la Carta de Derechos como medio, según expresó el Juez Sr. Frankfurter por el Tribunal en *Offutt*, "de vindicar la majestad de la ley, en su activa manifestación, contra la obstrucción y el ultraje." Cf: *Ex parte Terry*, 128 U.S. 289; *People* v. *McDonnell*, 37 N.E.2d 159 (Ill. 1941). Ver *People* v. *McDonnell*, 30 N.E.2d 80 (Ill. 1940); *Klein* v. *United States*, 151 F.2d 286 (1945); *Lyons* v. *Superior Court*, 278 P.2d 681 (Cal. 1955), *cert. denegado*, 350 U.S. 876; *In re Clark*, 103 S.W. 1105 (Mo. 1907); *People ex rel. Chanler* v. *Newburger*, 90 N.Y.S. 740 (1904); *Weiland* v. *Industrial Commission of Ohio*, 139 N.E.2d 36 (Ohio 1956); *State* v. *Winthrop*, 269 Pac. 793, 59 A.L.R. 1265. *Anotación*, 59 A.L.R. pág. 1272.

■■ Por serio y lesivo a la integridad del proceso judicial como pueda ser el comportamiento injurioso u ofensivo hacia la persona del magistrado que preside un juicio, o la desobediencia o menosprecio a sus órdenes dictadas en el curso de la vista, la actuación de los letrados apelantes trascendió a una esfera gravemente lesiva a la debida impartición de la justicia porque amenazó, y de hecho tuvo el efecto de paralizar como en efecto ocurrió, el proceso judicial mismo. Porque, es orden de ley en nuestro sistema social que los que cometen delitos sean procesados y castigados por los tribunales de justicia. Y es también orden de ley, constitucional, que a nadie se le procesará criminalmente ni se le condenará sin asistencia de abogado. La función que como abogados defensores voluntariamente asumieron los letrados, o ya se les impusiera como funcionarios del tribunal que son, forma parte integral esencialísima del orden de ley así instituído. El abandono de esa función por dichos letrados ciertamente constituyó, aun cuando no existiera el propósito preconcebido a tal efecto, una indebida obstrucción de la justicia. Basta, sino, la paralización del juicio desde la madrugada del 11 al 12 de junio hasta la tarde del 28 de junio, y las

dilaciones e inconveniencias que, como lo revela el récord, surgieron después del retiro de los abogados defensores hasta llevar el proceso a su terminación. Su propio representado se encontró súbitamente a mitad del juicio en una situación de incertidumbre y de desamparo legal, y el tribunal se halló súbitamente desposeído de su jurisdicción o facultad constitucional para seguir entendiendo en los méritos del proceso hasta que se proveyera al acusado nuevamente de asistencia de abogado, bien de su propia selección o ya nombrada por la Corte, como en efecto se hizo. Cf: *Glasser* v. *United States*, 315 U.S. 60, 86 L. ed 680; *Ex parte Hernández Laureano*, 54 D.P.R. 416; *Ex parte Resto*, 55 D.P.R. 725; *Rodríguez* v. *Corte*, 59 D.P.R. 652; *Pueblo* v. *Travieso*, 60 D.P.R. 530; *Pueblo* v. *Izquierdo*, 65 D.P.R. 905; *Pueblo* v. *Rodríguez*, 69 D.P.R. 980. Cf: *Rivera Escuté* v. *Delgado*, 80 D.P.R. 830. Hasta donde nos ha sido posible consultar precedentes de desacato basados en la conducta de un abogado, la de los aquí apelantes abandonando el juicio y a su cliente en pleno curso del mismo resulta insólita o poco común en las recopilaciones de jurisprudencia, indudablemente por el concepto de suma gravedad para la administración de justicia que a todo abogado ha debido merecer en el pasado. [5]

La delicada responsabilidad que en ese momento tenían los abogados defensores en quienes un ciudadano luchando por su libertad había depositado su confianza, y en quienes el Estado también confiaba para velar por un proceso limpio para ese ciudadano de acuerdo con la ley; el sitial preferente que la representación de abogado ocupa hoy en la justicia criminal, representación ésta que forma

---

[5] Hasta donde nos ha sido posible, hemos encontrado un caso sustancialmente igual, *People ex rel Chanler* v. *Newburger*, 90 N.Y.S. 740 (1904), aunque de los hechos no surge si el abandono del caso por el abogado fue un gesto de protesta transitorio o si, como en el de autos, fue un abandono definitivo; y un caso bastante similar, *Klein* v. *United States*, 151 F.2d 286 (1945) en donde, en el curso de un juicio y después de un receso de varios días, el abogado se negó a retornar a la corte anunciando por escrito, durante el receso, que no continuaría su representación.

parte misma del concepto de un juicio imparcial y justo bajo las garantías constitucionales del individuo,—aparte del juramento y de los cánones profesionales,—requiere que hagamos, en descargo de nuestro deber de vigilancia sobre la administración de justicia en el Estado Libre Asociado, una firme e inequívoca reprobación de la conducta profesional aquí observada, independientemente de la sanción de ley impuesta por el tribunal sentenciador o de la que creamos apropiada imponer en apelación. Con no hacerlo, o siquiera con no dar la debida importancia a lo aquí ocurrido dejando de enfatizar su seriedad, se ignoraría una situación de potencial peligro para el ejercicio del poder judicial con que el pueblo invistió a los tribunales de justicia, el cual podría quedar frustrado por la conducta o las actuaciones de los propios funcionarios judiciales, sean éstos abogados o jueces. Esas consideraciones requieren igualmente de aquellos que asumen el papel de defensores de los acusados de delito, un claro concepto de la fundamental misión que ejercen el cual, en la escala de los valores profesionales, debe estar colocado por sobre todo otro juicio de índole personal.

Los apelantes no discuten el que su conducta no sea constitutiva de desacato y parecen haberlo entendido así desde un principio al ponerse a disposición del Juez sentenciador para cualquier sanción que él quisiera imponerles. Sostienen, sin embargo, y así argumentan su tercer error, que ellos no incurrieron en responsabilidad o en falta debido a que, según expresan en el alegato, "fue la conducta del juez sentenciador la que moralmente obligó a los abogados a abandonar el caso." En otras palabras, su posición es que a la luz de la conducta del Juez debemos condonar la suya.

Convenir con los letrados apelantes, exonerándolos legal y moralmente de toda responsabilidad, haría rodar el principio de orden público e institucional en la administración de justicia a que nos hemos referido, principio éste que debe

154

mantenerse incólume por sobre todo problema de comportamiento profesional recíproco entre el Juez y los abogados que pudiera estar aquí envuelto.(⁶)   No entraremos en un análisis subjetivo del estado mental o de conciencia en que los letrados decían sentirse para no continuar en el juicio.   Pero sí debemos juzgar su conducta, constituyéndose por sí mismos en los únicos árbitros de una situación que resolvieron por su cuenta paralizando el proceso, a la luz de todas las circunstancias y demás factores en juego, y de la responsabilidad de los apelantes para con su cliente y para con el tribunal.

El análisis sereno del récord no revela la situación extrema en que frente al fundamental principio de orden de ley que debemos preservar intacto, pudiera quedar lastimado el no menos fundamental concepto de la dignidad personal y libertad de conciencia de estos letrados, como individuos y como funcionarios del tribunal.   Además, siempre hay remedios de ley disponibles.   El comportamiento judicial que de alguna manera afecte los derechos de un acusado o litigante puede llevarse al récord para la acción correctiva que proceda por un tribunal superior, a tenor con lo que deba ser un juicio imparcial y justo.   En este caso los letrados defensores venían cumpliendo con esa responsabilidad.   Como hemos visto, por la actitud del juez hacia el abogado defensor la convicción en *Peckham, supra,* fue revocada.   No parece

---

(⁶) Aún frente a hechos como los de *Offutt* y *Sacher* en que entró en consideración la conducta del juez, no se hizo expresión alguna de mayoría o de minoría justificando el comportamiento profesional de los abogados para exonerarlos de toda responsabilidad.   Tal comportamiento se condenó en términos claros y precisos.   El único problema ante el Tribunal Supremo, sobre el cual hubo criterios opuestos, lo fue en cuanto a la forma de enjuiciar y sancionar el mismo.   La rebaja de la sentencia de diez días originalmente impuesta a la de 48 horas, y por último a 6 horas (véase escolio 4, ante) demuestra en *Offutt* el balance final de apreciación que hizo la corte entre la conducta del juez y la del abogado, pero esa condena así simbólica vindicó la dignidad y el decoro de la corte y del proceso judicial.

ser éste un caso aislado. (⁷)    Por sincero que fueran los sentimientos de los letrados apelantes y honesto su juicio en torno a la situación que creían tener ante sí, el camino que siguieron de desobediencia a las órdenes del Magistrado causando la prolongada interrupción del proceso judicial es reprobable.    Porque aún cuando un magistrado, olvidándose de su condición de juzgador imparcial asuma posiciones en la contienda, dejando de representar, como se ha dicho, la impersonal manifestación de la ley, así y todo él encarna la autoridad de la ley y sus mandatos no deben ser desafiados por aquellos llamados a obedecerlos.

▄▄▄▄    Resta por último considerar el planteamiento de los apelantes referente al castigo en el grado máximo de cárcel que les fue impuesto.    Este aspecto de ordinario queda bajo la discreción del juez sentenciador, y como se dijo en *United States* v. *Mine Workers*, 330 U.S. 258, y es principio de general aplicación, al imponerse un castigo por desacato criminal el juez puede propiamente tomar en cuenta el grado de la obstinada desobediencia, la seriedad de las consecuencias de los actos constitutivos de desacato, así como la importancia de impedir la repetición de los mismos en el futuro. Pero al igual que en todo otro caso en que está envuelta la conducta humana, la intención con que se comete un acto de desacato y las circunstancias que lo rodean, de donde pueden surgir elementos de atenuación si bien no de total exoneración, han de ser considerados a los efectos de la imposición del castigo.    Cf: *Cooke* v. *United States, supra,* (pág. 538) ; *Butterfield* v. *State,* 13 N.W.2d 572; 151 A.L.R. 745; *People ex rel Chicago Bar Assn.* v. *Goodman,* 8 N.E.2d 941, 111

---

(⁷) Cf: *Webber* v. *Webber,* 199 P.2d. 934; *Etzel* v. *Rosenbloom,* 189 P.2d 848; *Pickerell* v. *Griffith,* 29 N.W.2d 588; *Berguin* v. *Pacific Electric Ry. Co.,* 263 Pac. 220; *Pilegram* v. *Haas,* 167 P.2d 339; *People* v. *Burns,* 241 P.2d 308; *Collins* v. *Sparks,* 310 S.W.2d 45; *Podlasky* v. *Price,* 196 P.2d 608; *Anderson* v. *Mothershead,* 64 P.2d 995; *Hansen* v. *St. Paul City Ry. Co.,* 43 N.W.2d 260; *Murr* v. *Murr,* 197 P.2d 369; *Crenshaw* v. *Southern Ry. Co.,* 53 S.E.2d 789; *Delzell* v. *Day,* 223 P.2d 625.

A.L.R. 1; *Cammer* v. *United States*, 223 F.2d 322 (revocado en otros aspectos), 350 U.S. 399; *In re Braun*, 259 Fed. 309.

Aquí existen circunstancias a ser consideradas. Como lo ha demostrado el récord, hubo cierta conducta del juez sentenciador, sin que se entienda que intentamos ahora emitir juicio sobre cualquier efecto de la misma en la convicción del acusado, que en una justa aquilatación de los hechos ocurridos no podemos pasar por alto. Fue injustificada la imputación de "táctica dilatoria" hecha por el Juez a los abogados defensores en torno a una legítima gestión de éstos en el descargo de su responsabilidad. Fueron también lamentables sus expresiones sobre "moral alta o moral baja de los representantes del acusado", aún en la manera impersonal en que se pronunciaron en el curso de una instrucción al jurado, y aún cuando motivara la instrucción la referencia hecha por uno de los letrados al desprestigio de la "honesta" representación de la defensa al comentar la manifestación del Juez sobre tácticas dilatorias. Esas expresiones del Juez, y el improcedente castigo por desacato impuesto en pleno juicio a otro de los abogados pudo crear una situación que en el decir de ellos les hiciera sentirse en la condición espiritual, moral y anímica de no seguir viendo el caso. Hemos reprobado, ciertamente, la conducta de los abogados. No por ello ha de decirse que hubo total carencia de hechos que pudieran motivarla, con todo lo errónea que fue.

La acción punitiva en el desacato criminal tiene por propósito, ante todo, vindicar la majestad de la ley en la autoridad judicial menospreciada. Por la naturaleza sumaria de la manera en que se castiga el desacato en corte abierta, que según se ha observado constituye una excepción a las garantías de la Carta de Derechos aceptada ante el imperativo de mantener el orden, el decoro y la integridad del proceso judicial, no ha de usarse más autoridad que el menor poder posible apropiado al fin que se persigue. Cf: *Anderson* v. *Dunn*, 6 Wheat 204; *In re Michael*, 326 U.S. 224;

*In re Oliver*, 333 U.S. 257; *Sacher* v. *United States, supra,* (Black, 343 U.S. pág. 21); *Cammer* v. *United States,* 350 U.S. 399. Ya hemos señalado que la vindicación de la ley es el fin propuesto. A la luz de todas las anteriores consideraciones, no se justifica una condena de prisión. *United States* v. *Mine Workers, supra; Rosenfeld* v. *United States,* (C.A. 4) 167 F.2d 222. Se modifica la sentencia apelada de 30 días de cárcel a $100 de multa, y así modificada se confirma.

En lo que respecta al caso 15,851 contra el Lcdo. Tomás Torres Cortés, concluímos que fue improcedente el castigo por desacato. El abogado tenía un legítimo derecho, en defensa de su cliente, a hacer constar en récord la excepción que intentó fundamentar contra la instrucción dada por el Juez al jurado a que nos hemos referido. Él tenía derecho a levantarse para hacer cualquier nuevo planteamiento, y era deber del Juez oir y resolver según procediera. Por el solo hecho de levantarse el abogado para anunciar un planteamiento, éste no incurrió en desacato aún cuando el Juez hubiera dado por terminado un incidente anterior. Cf: *Bennett* v. *Superior Court,* 222 P.2d 276 (Cal. 1950); *People* v. *Harrington,* 21 N.E.2d 903 (Ill. 1939); *Curran* v. *Superior Court,* 236 Pac. 975 (Cal. 1925); *Ex parte Charles C. Crenshaw,* 259 S.W. 587 (Tex. 1924), 31 A.L.R. 1181 y Anotación a la pág. 1185. Los casos citados por El Pueblo, *Ex parte Lastra,* 56 D.P.R. 559 y *Pueblo* v. *Báez,* 72 D.P.R. 175, se basaron en hechos y circunstancias distinguibles de los hechos de este caso.

El extraordinario poder de castigar sumariamente, sin ser oído el perjudicado, puesto en manos de los jueces como medio eficaz de mantener el orden y la integridad del proceso judicial, ha de ejercerse con la mayor prudencia, circunspección y sentido de buen juicio, no vaya a ocurrir que se convierta, además de en un vehículo de opresión, en un instrumento destructivo del propio orden e integridad del proceso

que la ley quiso mantener. *La sentencia en el caso de desacato 15,851 será revocada.*

Los Jueces Presidente Sr. Negrón Fernández y Asociado Sr. Belaval no intervinieron.